IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CALVIN KAWAMURA and JEANIE KAWAMURA, | ) ) ) **Civ. No. 12-00294 ACK-BMK** |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| BOYD GAMING CORPORATION, a foreign corporation; M.S.W., INC., a foreign corporation d/b/a MAIN STREET STATION CASINO BREWERY HOTEL; JOHN DOES 1-10; DOE CORPORATIONS 1-10; DOE PARTNERSHIPS 1-10; DOE ENTITIES 1-10, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND/OR IMPROPER VENUE, OR IN THE ALTERNATIVE TO TRANSFER VENUE**

The Court hereby GRANTS IN PART AND DENIES IN PART Defendants' Motion To Dismiss for Lack of Personal Jurisdiction and/or Improper Venue, or in the Alternative To Transfer Venue. The Court finds that it can exercise specific personal jurisdiction in this case due to Defendants' extensive marketing to and business derived from Hawai'i residents, including the Kawamuras. The Court further finds that venue is proper in this district. The Court finds, however, that it is in the interests of justice to transfer this action to the District of Nevada.

## PROCEDURAL BACKGROUND

This case arises from injuries that Plaintiff Calvin Kawamura allegedly suffered when he was attacked and robbed while staying at Defendants' Las Vegas hotel and casino.

## I.   The Instant Motion

The Kawamuras filed their Complaint on May 24, 2012. (Doc. No. 1.) On June 14, 2012, Defendants moved to dismiss the complaint for lack of jurisdiction or improper venue, or in the alternative to transfer venue. (Doc. No. 5 ("Motion").) The motion was supported by declarations from counsel ("Schmitt Decl.") and from the General Counsel of Defendant Boyd Gaming Corporation ("Larson Decl."). The Kawamuras filed an Opposition on October 4, 2012, which was supported by declarations from counsel ("Saffery Decl.") and from Plaintiff Calvin Kawamura ("Kawamura Decl."), as well as various exhibits. (Doc. No. 18.) Defendants filed a Reply on October 30, 2012.[1/] (Doc. No. 23.)

───────────────

[1/]     As a preliminary matter, the Kawamuras argue that the Court should disregard Defendants' Reply because it was untimely filed. (See Doc. No. 24 ("Objection").) The Court disagrees. A hearing on the instant motion was originally scheduled for October 25, 2012. (Doc. No. 6.) Under Local Rule 7.4, Defendants' Reply was therefore due on October 11, 2012. On October 10, therefore, counsel exchanged emails in which they agreed to discuss at the next day's settlement conference with the magistrate judge a stipulation to extend Defendants' deadline to reply. (Objection, Ex. A.)
At the October 11 settlement conference, the magistrate judge informed the Parties that the hearing date for the instant motion would need to be continued because the Court was in trial on another matter. (See Objection, Ex. D.) The Court issued its order continuing the motion hearing the next day, October 12,

A hearing on the Motion was held on November 13, 2012. At the hearing, the Court requested that the Parties file supplemental briefing on (1) the application of Hawaiʻi choice-of-law rules to this case and (2) whether Mr. Kawamura's assailant is a necessary and indispensable party to this litigation. The Parties filed their supplemental briefs on November 26, 2012. (Doc. Nos. 28 ("Kawamura Supp.") & 29 ("Defs.' Supp.")

---

2012. (Doc. No. 20.)

    The Kawamuras argue that because the order continuing the hearing was issued the day <u>after</u> Defendants' Reply was originally due, Defendants' Reply is untimely and should be disregarded. That argument is unconvincing. Defendants reasonably relied on the magistrate judge's October 11 statement that the motion hearing would be continued. Moreover, counsels' emails demonstrate that the Kawamuras were willing to grant Defendants an extension despite taking the position that Defendants' deadline had already passed. (<u>See</u> Objection, Ex. C ("Your clients' Reply was due yesterday, but . . . my clients will have no objections if you file your Reply by Monday.").) Defendants filed their Reply fourteen days before the new hearing date. In sum, even if Defendants' Reply was untimely, though the Court does not so find, the Kawamuras can hardly argue that they were prejudiced by the delay. The Court will consider Defendants' Reply.

3

## FACTUAL BACKGROUND[2]

Calvin and Jeanie Kawamura, a married couple who live in Honolulu, were staying at the Main Street Station hotel and casino in Las Vegas, Nevada, on the night of May 25, 2010. (Compl. ¶¶ 2, 13.) The Kawamuras were playing slot machines on the main casino floor at 3:00 a.m. that night when Mr. Kawamura left to go to the nearest men's restroom. (Id. ¶¶ 13-14.) As Mr. Kawamura entered the restroom, he was violently attacked and robbed. (Id. ¶ 17.) Mr. Kawamura was knocked unconscious during the attack and was found on the floor of the restroom by another casino patron. (Id. ¶ 18.) Mr. Kawamura was taken to the hospital, where he was found to have numerous skull and facial fractures, lacerations, and bleeding in his brain. (Id. ¶ 21.) While waiting with Mr. Kawamura in the hospital's emergency room, Mrs. Kawamura fainted and was also admitted to the hospital. (Id. ¶ 22.)

Mr. Kawamura remained in the Nevada hospital for several days before returning to Hawai'i and continued to receive

---

[2]    The facts as recited in this Order are for the purpose of disposing of the instant motion and are not to be construed as findings of fact that the parties may rely on in future proceedings in this case. For the purpose of deciding the instant motion, the Court accepts as true all factual allegations contained within the Kawamuras' Complaint and its exhibits, except for any assertions in the Complaint which are contradicted by Defendants' declarations. See Alexander v. Circus Circus Enters, Inc., 972 F.2d 261, 262 (9th Cir. 1992) (citations omitted).

4

medical treatment for his injuries in Hawai'i. (Id. ¶¶ 23-24.) In the two months after his return, bleeding in his brain reoccurred twice, requiring operations to relieve fluid pressure and remove a blood clot. (Id. ¶¶ 25-26.) Mr. Kawamura has continued to suffer physical and psychological symptoms resulting from the attack. (Id. ¶¶ 27, 29.) Mrs. Kawamura has also suffered from psychological and emotional symptoms. (Id. ¶¶ 28-29.)

Mr. Kawamura's attacker was arrested and identified as Christopher Corson, a homeless person with a significant criminal record. (Id. ¶ 17.) Corson was ultimately convicted of assault and battery and sentenced to a minimum of six years' imprisonment with a maximum of fifteen years. (Schmitt Decl. ¶ 2; Saffery Decl. ¶ 16.) As of June 2012, he was incarcerated in Nevada. (Schmitt Decl. ¶ 2.)

Defendants Boyd Gaming Corporation and M.S.W., Inc. are Nevada corporations with their principal places of business in Las Vegas, Nevada. (Larson Decl. ¶¶ 3, 6.) M.S.W., Inc. ("Main Street Station") does business as the Main Street Station Casino Brewery Hotel. (Compl. ¶ 4.) Boyd Gaming is the parent company of California Hotel & Casino, which is the parent company of Main Street Station. (Larson Decl. ¶ 4.) Boyd Gaming does not run the daily operations at Main Street Station. (Id. ¶ 7.) Boyd Gaming's subsidiaries and affiliates include eighteen casinos, none of which are located in Hawai'i. (Larson Decl. ¶ 5.) Boyd runs a

loyalty program called "B-Connected", through which customers may build up and redeem points at its casinos, including those in Nevada. (Opp'n Ex. 2, at 5.) The Kawamuras are enrolled in the B-Connected program. (Kawamura Decl. ¶ 5.)

Neither Boyd Gaming nor Main Street Station have any offices, employees, or agents for service of process in Hawai'i. (Larson Decl. ¶¶ 3, 6.) They do not rent or own any real or personal property in Hawai'i, including any bank accounts. (Id.) They do not pay any Hawai'i taxes. (Id.) Neither is registered to do business in Hawai'i. (Id.)

Boyd Gaming's SEC 10-K filing for fiscal year 2011 states, however, that Boyd Gaming has "developed a distinct niche for our downtown [Las Vegas] properties by focusing on customers from Hawaii." (Opp'n, Ex. 2 at 9.) The filing explains that Boyd Gaming's downtown Las Vegas properties – which include Main Street Station – "focus their marketing on gaming enthusiasts from Hawaii," which marketing, "combined with our Hawaiian promotions," has allowed Boyd Gaming's downtown Las Vegas properties "to capture a significant share of the Hawaiian tourist trade in Las Vegas." (Id.) Boyd Gaming's 10-K states that during the 2011 fiscal year, "patrons from Hawaii comprised approximately . . . 55% of the occupied room nights at Main Street Station" and 53% and 68%, respectively, of the occupied room nights at its other two downtown Las Vegas properties. (Id.)

It states that Boyd Gaming's downtown Las Vegas properties are "benefiting [sic] from successful marketing efforts to our Hawaiian customers, and the strength of the local Hawaiian economy." (Id. at 46.)

Boyd Gaming lists seven factors which it believes "have contributed to our success in the past and are central to our success in the future"; one of the seven is that "our downtown Las Vegas properties focus their marketing programs on, and derive a majority of their revenue from, a unique niche – Hawaiian customers." (Id. at 7.) The Kawamuras booked their May 2010 stay at Main Street Station to take advantage of special offers which they received in the mail from Defendants. (Kawamura Decl. ¶ 6.)

The Kawamuras brings five claim against Boyd Gaming and Main Street, for: (1) negligence; (2) innkeeper liability; (3) premises liability; (4) negligent infliction of emotional distress; and (5) gross negligence/punitive damages.

**STANDARD**

## I.   Standard for Motion to Dismiss for Lack of Personal Jurisdiction

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004). It is within the Court's discretion to allow the plaintiff to submit

affidavits, allow affidavits plus discovery, or to conduct an evidentiary hearing. <u>Data Disc., Inc. v. Sys. Tech. Assoc., Inc.</u>, 557 F.2d 1280, 1285 (9th Cir. 1977). When the Court rules without conducting an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts" through the submitted materials in order to avoid dismissal.[3/] <u>Schwarzeneger</u>, 374 F.3d at 800; <u>Data Disc.</u>, 557 F.2d at 1285. In such cases, the Court only inquires into whether the plaintiff's "pleadings and affidavits make a prima facie showing of personal jurisdiction." <u>Id.</u> (citation omitted).

"In determining whether [the plaintiff] has met this burden, uncontroverted allegations in [the] complaint must be taken as true, and 'conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.'" <u>Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert</u>, 94 F.3d 586, 588 (9th Cir. 1996) (citation omitted).

## II. Standard for Motion to Dismiss for Lack of Venue or, in the Alternative, Transfer

The general venue statute, 28 U.S.C. § 1391(b), states:

A civil action may be brought in –

(1) a judicial district in which any defendant resides, if all defendants are

---

[3/]    The plaintiff must eventually establish jurisdiction by a preponderance of the evidence either at a pretrial evidentiary hearing or at trial. <u>See Data Disc</u>, 557 F.2d at 1285.

residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or

(3) if there is no district in which the action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Pursuant to 28 U.S.C. § 1406(a), if venue in the district is improper, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

Finally, even if venue is proper in the district pursuant to pursuant to 28 U.S.C. § 1391, the district court may transfer the case to another district for the convenience of the parties and witnesses and in the interest of justice. 28 U.S.C. § 1404(a). "The purpose of this section is to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Hi-Pac, Ltd. v. Avoset Corp., 980 F. Supp. 1134, 1139 (D. Haw. 1997) (internal quotation marks and citations omitted).

## DISCUSSION

Defendants argue that (1) the Kawamuras' Complaint should be dismissed because the Court cannot exercise personal jurisdiction over the Defendants; (2) the Kawamuras' Complaint

9

should be dismissed because venue in this forum is improper; and (3) in the alternative, the litigation should be transferred to Nevada. For the following reasons, the Court determines that it has specific personal jurisdiction over Defendants and that venue is proper in this district, but that it is in the interests of justice to transfer this action to the District of Nevada.

## I.    Personal Jurisdiction

Where, as here, no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the court sits. Fed. R. Civ. Proc. 4(k)(1)(A); CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1073 (9th Cir. 2011) (citation omitted). Because Hawai'i's long-arm statute, Hawai'i Revised Statutes § 634-35, reaches to the full extent permitted by the Constitution, Cowan v. First Ins. Co., 608 P.2d 394, 399 (Haw. 1980), the Court need only determine whether due process permits the exercise of personal jurisdiction, see, e.g., Schwarzenegger, 374 F.3d at 800-01. For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, that defendant must have "certain minimum contacts" with the relevant forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" CollegeSource, 653 F.3d at 1073-74 (quoting Int'l Shoe Co. v. Office of Unemp't Comp. & Placement, 326 U.S. 310, 316 (1945)).

10

Due process is satisfied if the Court has "either general jurisdiction or specific jurisdiction" over the defendant. Doe v. Am. Nat'l Red Cross, 112 F.3d 1048, 1050 (9th Cir.1997). Here, the Court finds that there is no general personal jurisdiction over Defendants in this district, but that the Court has specific personal jurisdiction over Defendants for purposes of this litigation.

**I.A  General Personal Jurisdiction**

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, __ U.S. __, 131 S. Ct. 2846, 2851 (2011). For general jurisdiction to exist over nonresident defendants such as Boyd Gaming and Main Street Station, the defendants must engage in "continuous and systematic general business contacts,", that "approximate physical presence" in the forum state. CollegeSource, 653 at 1074 (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984) and Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1086 (9th Cir. 2000)). The standard for general jurisdiction "is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the

11

forum state to answer for any of its activities anywhere in the world." <u>Schwarzenegger</u>, 374 F.3d at 801.

Plaintiffs argue that the Court has general jurisdiction over Defendants because Defendants "engage in pervasive solicitation of business from Hawai'i consumers" and "reap substantial rewards from their contacts with Hawaii." (Opp'n at 20.) The Court disagrees. The Kawamuras have not satisfied the "exacting" standard necessary to establish general jurisdiction over Defendants. Defendants have no employees or agents in Hawai'i, own no property here, and conduct no business here. Their marketing in Hawai'i and their business derived from Hawai'i residents, while extensive, does not "approximate physical presence" here. The Court concludes that it does not have general personal jurisdiction over Defendants.

**I.B  Specific Personal Jurisdiction**

Specific personal jurisdiction requires that the defendant have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." <u>Int'l Shoe</u>, 326 U.S. at 316. To determine whether specific jurisdiction exists, a court must employ a three-part test to evaluate the nature and quality of the defendant's contacts with the forum state:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by

12

which he purposefully avails himself of the
privilege of conducting activities in the
forum, thereby invoking the benefits and
protections of its laws;

(2) the claim must be one which arises out of
or relates to the defendant's forum-related
activities; and

(3) the exercise of jurisdiction must comport
with fair play and substantial justice, i.e.
it must be reasonable.

Schwarzenegger, 374 F.3d at 801-02 (quoting Lake v. Lake, 817

F.2d 1416, 1421 (9th Cir.1987)). "If any of the three

requirements is not satisfied, jurisdiction in the forum would

deprive the defendant of due process of law." Omeluk v. Langsten

Slip & Batbyggeri A/S, 52 F.3d 267, 270 (9th Cir. 1995).

The plaintiff bears the burden of satisfying the first

two requirements of the test for specific personal jurisdiction.

Schwarzenegger, 374 F.3d at 801-02 (citation omitted). If the

plaintiff fails to satisfy either of these requirements, personal

jurisdiction is not established in the forum state. Id. If the

plaintiff succeeds in satisfying the first two requirements, "the

burden then shifts to the defendant to 'present a compelling

case' that the exercise of jurisdiction would not be reasonable."

Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-78

(1985)). The Court may exercise jurisdiction "with a lesser

showing of minimum contacts than would otherwise be required if

considerations of reasonableness dictate." Haisten v. Grass

13

<u>Valley Med. Reimbursement Fund, Ltd.</u>, 784 F.2d 1392, 1397 (9th Cir. 1986).

**I.B.1      Purposeful direction**

In tort cases, whether a defendant purposefully directs his activities at the forum state is determined by applying the "effects test" introduced by the Supreme Court in <u>Calder v. Jones</u>, 465 U.S. 783 (1984). The test is satisfied if the defendant is alleged to have: 1) committed an intentional act; 2) expressly aimed at the forum state; and 3) causing harm that the defendant knows is likely to be suffered in the forum state. <u>CollegeSource</u>, 653 F.3d at 1077 (citation omitted). Regarding the first factor, to establish "express aiming," the plaintiffs must demonstrate " 'individual targeting' of forum residents," in other words, "actions taken outside the forum state for the purpose of affecting a particular forum resident or a person with strong forum connections." <u>Fiore v. Walden</u>, 688 F.3d 558, 577 (9th Cir. 2011) (citations omitted).

In this case, the Kawamuras have submitted evidence of Defendants' extensive marketing efforts towards Hawai'i residents. This is not a case, of which there are many, in which a Las Vegas casino merely distributed a few brochures to in-state travel agents or maintained a generalized website. See, e.g., <u>Bell v. Imperial Palace Hotel/Casino, Inc.</u>, 200 F. Supp. 2d 1082 (E.D. Mo. 2001) (casino's website did not create minimum contacts

14

necessary for personal jurisdiction); <u>Decker v. Circus Circus
Hotel</u>, 49 F. Supp. 2d 743 (D.N.J. May 12, 1999) (advertisements
mailed to New Jersey residents did not create necessary minimum
contacts). More than one half of Main Street Station's customers
are Hawai'i residents, and a majority of its revenue comes from
them. Boyd Gaming actively focuses its marketing on Hawai'i and
considers its market share in Hawai'i to be key to its success.
Main Street Station mailed brochures and advertisements directly
to the Kawamuras' home, and Boyd Gaming maintained a customer
loyalty program called B-Connected, which the Kawamuras were
enrolled in. These activities were intentional acts expressly
aimed at Hawai'i; they clearly rise to the level of "individual
targeting of forum residents." <u>Fiore</u>, 688 F.3d at 588.

 The Kawamuras booked their May 2010 stay at Main Street
Station after receiving mailings to their home from Defendants,
in order to take advantage of the special offers contained in
those mailings. Furthermore, since the Kawamuras are Hawai'i
residents, harm suffered by them during a stay at Main Street
Station was likely to be felt in Hawai'i.

 Defendants attempt to draw a distinction between the
marketing done by Main Street Station and that done by Boyd
Gaming. (Reply at 7-9.) The argument is unavailing. Even
accepting Defendants' unsupported speculation that the Kawamuras
were not solicited to join B-Connected while in Hawai'i (<u>id.</u> at

8), Defendants do not appear to contest that Boyd Gaming runs the "B-Connected" loyalty program, of which the Kawamuras were members. In Day v. Harrah's Hotel & Casino Las Vegas, Civ. No. 10-1746, 2010 WL 4568686 (S.D. Cal. Nov. 2, 2010), the California district court denied a Las Vegas casino's motion to dismiss for lack of personal jurisdiction where plaintiffs, who were residents of Southern California, were frequent guests at the casino's San Diego branch, which offered "reward points" to gamblers in San Diego which could be redeemed at the Las Vegas branch. Here, Boyd Gaming has set up a loyalty program which encourages its members – including the Kawamuras – to build up and redeem points at Boyd casinos. Combined with Boyd Gaming's repeated admissions that Boyd focuses its marketing on Hawai'i residents, Plaintiffs have submitted enough evidence to make a prima facie case that both Boyd Gaming and Main Street Station have purposefully directed their activities toward Hawai'i and towards individual forum residents, including the Kawamuras.

### I.B.2    Arising out of forum-related activities

The second prong of the jurisdictional analysis is met if the claim "arises out of or relates to the defendant's forum-related activities." Schwarzenegger, 374 F.3d at 801–02 (citation omitted). Courts in the Ninth Circuit use a "but for" test to determine whether a claim arises out of forum-related activities. Menken v. Emm, 503 F.3d 1050, 1058 (9th Cir. 2007)

(plaintiff must show that he "would not have suffered an injury 'but for' [defendant's] forum-related conduct").

The Court finds instructive the Ninth Circuit's opinion in Shute v. Carnival Cruise Lines,897 F.2d 377 (9th Cir. 1988), reversed on other grounds by 499 U.S. 585 (1991). In that case, Mrs. Shute was injured during a cruise aboard a Carnival cruise ship. The Ninth Circuit, applying its "but-for" test for causation, ruled that the injury "arose out of" Carnival's forum-related conduct where Carnival's solicitation of business attracted the Shutes, through their travel agent, to the cruise during which Mrs. Shute was injured. Id. at 386. "In the absence of Carnival's activity, the Shutes would not have taken the cruise, and Mrs. Shute's injury would not have occurred. It was Carnival's forum-related activities that put the parties within 'tortious striking distance' of one another." Id.

The Kawamuras have submitted evidence that they booked their May 2010 stay at Main Street Station to take advantage of special offers contained in mailings sent to them by Defendants. As in Shute, the Kawamuras have therefore submitted evidence that Defendants' marketing efforts in Hawai'i attracted the Kawamuras to Defendants' casino and thus put the parties within "tortious striking distance" of one another. The Kawamuras have met this prong of the test for specific personal jurisdiction.

17

### I.B.3     Reasonableness

Since the Kawamuras have satisfied both the first and second prongs of the analysis for specific personal jurisdiction, the burden now shifts to Defendants to "'present a compelling case' that the exercise of jurisdiction would not be reasonable." Schwarzenegger, 374 F.3d at 801-02 (quoting Burger King, 471 U.S. at 476-78). In making a reasonableness determination, the Court must consider the following factors:

> (1) The extent of the defendants' purposeful interjection into the forum state's affairs;
>
> (2) the burden on the defendant of defending in the forum;
>
> (3) the extent of conflict with the sovereignty of the defendants' state;
>
> (4) the forum state's interest in adjudicating the dispute;
>
> (5) the most efficient judicial resolution of the controversy;
>
> (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and
>
> (7) the existence of an alternative forum.

Fiore, 657 F.3d at 854. The Court balances all seven factors, recognizing that none of the factors is dispositive in itself. Id.

### I.B.3.i     Extent of purposeful interjection

The Ninth Circuit has recognized that "circumstances may exist where 'the level of purposeful injection into the forum supports a finding of purposeful availment yet still weighs

18

against the reasonableness of jurisdiction.'" <u>Fiore</u>, 688 at 583
(citation omitted). Such circumstances do not exist here. As
discussed in detail above, Defendants have cultivated a "unique
niche" among Hawai'i residents so assiduously that more than 50%
of Main Street Station's revenue derives from Hawai'i guests – as
well as more than 50% of the revenue of Boyd Gaming's two other
downtown Las Vegas properties. This factor weighs heavily in
favor of Plaintiffs.

### I.B.3.ii  Burden on defendant

The Court recognizes that "a defendant's burden in
litigating in the forum is a factor in the assessment of
reasonableness, but unless the 'inconvenience is so great as to
constitute a deprivation of due process, it will not overcome
clear justifications for the exercise of jurisdiction.'"
<u>Panavision Int'l v. Toeppen</u>, 141 F.3d 1316, 1321, 1323 (9th
Cir.1998)(internal citations omitted). Moreover, courts in this
Circuit have observed that "[r]ecent advancements in
communication and transportation . . . have greatly reduced the
inconvenience once associated with defending in another forum."
<u>Robinson Corp. v. Auto-Owners Ins. Co.</u>, 304 F. Supp. 2d 1232,
1240 (D. Haw. 2003) (citing <u>Panavision</u>, 141 F.3d at 1323).
Defendants have no offices, employees, or real or personal
property in Hawai'i. Accordingly, litigating this matter in

Hawai'i imposes a burden on Defendants. This factor slightly favors Defendants.

### I.B.3.iii Conflict with Nevada sovereignty

There is no evidence presented to demonstrate a conflict with the sovereignty of Nevada, Defendants' principal place of business. Moreover, the sovereignty of a defendant's state is not a significant consideration in actions between citizens of the United States. See Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 841 (9th Cir. 1986). This factor is neutral.

### I.B.3.iv  Interest of Hawai'i

"Hawaii has a strong interest in providing an effective means of redress for its residents who are tortiously injured." Resnick v. Rowe, 283 F. Supp. 2d 1128, 1141 (D. Haw. 2003) (citation omitted). That interest is no doubt particularly strong where a business has specifically focused on Hawai'i customers and has succeeded in attracting large numbers of Hawai'i residents to its premises. This factor strongly favors the Kawamuras.

### I.B.3.v   Judicial efficiency

"[C]onsideration of the most efficient judicial resolution is 'no longer weighted heavily given the modern advances in communication and transportation.'" Panavision, 141 F.3d at 1323 (quoting Caruth v. Int'l Psychoanalytical Ass'n, 59

20

F.3d 126, 129 (9th Cir. 1995)). Both sides have submitted extensive lists of possible witnesses. The Kawamuras list themselves, two other family members, fourteen medical professionals, and three other people whose role the Court cannot discern, all of whom are located in Honolulu. The Kawamuras also admit that the testimony of eight Las Vegas-based medical professionals may be necessary, along with witnesses or documents from the Las Vegas Police Department. Defendants suggest that four police officers, seven doctors, and twelve of Defendants employees may be required to testify, all of whom are based in Las Vegas. In sum, it appears that testing the merits of the Kawamuras' claim may require testimony from up to twenty Las Vegas witnesses, whereas testing the extent of the Kawamuras' damages may require testimony from up to twenty Honolulu witnesses.

        The sheer number of witnesses is not as important as the materiality of their potential testimony. For example, in Catalano v. BRI, Inc., 724 F. Supp. 1580 (E.D. Mich. 1989), plaintiff, a Michigan resident, was injured when the ceiling of his Las Vegas hotel room collapsed onto him. The court found that the testimony of Michigan witnesses as to his injuries was at least as material as the testimony of Nevada witnesses as to the events in Nevada, and denied the motion to transfer. Here, it is not likely that either side would require trial testimony from

all or even most of the witnesses whom they have listed.
Moreover, while the testimony of some Las Vegas witnesses will be
material, "it will be no more material than the testimony of
plaintiff and plaintiff's treating physician[s]." Id. at 1584.

Defendants also suggest that the testimony of the
assailant, Christopher Corson, will be necessary. Corson is
currently incarcerated in Nevada. Defendants contend that this
Court cannot compel Christopher Corson to testify because he is
incarcerated outside the District of Hawai'i. Although not often
tested, that contention does not appear to be correct, at least
in this circuit. See, e.g., Greene v. Prunty, 938 F. Supp. 637,
638 (S.D. Cal. 1996) ("The prevailing view of the appellate
courts favors the extraterritorial application of a writ of
habeas corpus ad testificandum in appropriate circumstances.")
"Courts that have considered the territorial reach of writs of
habeas corpus ad testificandum . . . have concluded that such
writs can be issued to produce a person incarcerated outside of
the district to testify." Id. The Court may also order the party
calling Mr. Corson as a witness to arrange for him to testify via
videoconference, if possible. See, e.g., Montes v. Rafalowski,
No. C 09-0976, 2012 WL 2395273 (N.D. Cal. June 25, 2012) (denying
writ of habeas corpus ad testificandum on condition that
defendants are able to arrange to have prisoner testify via

22

videoconference). Defendants' arguments on this point are therefore moot, and the factor as a whole is neutral.

### I.B.3.vi   Importance of forum to plaintiff's interest

"[I]n evaluating the convenience and effectiveness of relief for the plaintiff, the Ninth Circuit has given little weight to the plaintiff's inconvenience." Panavision, 141 F.3d at 1324 (internal citations omitted)). Thus, although it may be more costly and inconvenient for the Kawamuras to litigate this action in another forum, this factor weighs only slightly in favor of the Kawamuras.

### I.B.3.vii Existence of alternative forum

The parties do not dispute that the Kawamuras' claims could have been brought in the District of Nevada. (Motion at 23; Opp'n at 38-39.) This factor weighs in favor of Defendants.

### I.B.4   Conclusion as to Personal Jurisdiction

Taken as a whole, Defendants have not made a "compelling case" that exercise of jurisdiction over them in Hawai'i would be unreasonable.  See Fiore, 688 at 585. Due process is met when there is "'a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" Burger King, 471 U.S. at 472 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980)).

Defendants deliberately set out to attract Hawai'i residents, including the Kawamuras, to their businesses, and have done so very successfully. Given the extent of Defendants' reliance on business from Hawai'i guests, it does not "offend traditional notions of fair play and substantial justice" to subject Defendants to the jurisdiction of Hawai'i's courts when one of those guests is injured. The Court therefore DENIES Defendants' Motion To Dismiss on grounds of lack of personal jurisdiction.

**II.  Improper Venue**

Defendants argue that venue in this district is improper because Defendants do not reside in this district. Under 28 U.S.C. § 1391, venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." Corporations are "deemed to reside . . . in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 USC § 1391(c)(2). Thus, the question of proper venue collapses into the question of personal jurisdiction. The Court has found that it may exercise personal jurisdiction over Defendants with respect to the Kawamuras' action. For purposes of determining the proper venue for this action, Defendants are therefore "deemed to reside" in

this district. Venue is thus proper in this Court and the Court
DENIES Defendants' Motion To Dismiss on this ground.

**III.        Transfer of Venue**

        Defendants argue that, even if venue is proper, this
action should be transferred to the District of Nevada "[f]or the
convenience of parties and witnesses, in the interest of justice"
under 28 U.S.C. § 1404(a).

        Transfer under this section is limited "to those
federal districts in which the action 'might have been brought.'"
Id. The Court therefore must first determine whether this lawsuit
could have been brought in the District of Nevada.

        Under 28 U.S.C. § 1391(a), venue is proper in "a
judicial district in which a substantial part of the events or
omissions giving rise to the claim occurred." Because the attack
on Mr. Kawamura occurred in Nevada, the District of Nevada is a
proper venue.

        The Court must next consider whether it is convenient
for the parties and witnesses and "in the interest of justice" to
transfer this litigation to the District of Nevada. The Ninth
Circuit has stated that a court must weigh multiple factors when
considering a motion for change of venue. See Jones v. GNC
Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000). For
example, a court may consider:

                (1) the location where the relevant
                agreements were negotiated and executed,

                                    25

> (2) the state that is most familiar with the
> governing law, (3) the plaintiff's choice of
> forum, (4) the respective parties' contacts
> with the forum, (5) the contacts relating to
> the plaintiff's cause of action in the chosen
> forum, (6) the differences in the costs of
> litigation in the two forums, (7) the
> availability of compulsory process to compel
> attendance of unwilling non-party witnesses,
> and (8) the ease of access to sources of
> proof.

Id. at 498-99 (internal footnotes omitted). Further, "the relevant public policy of the forum state, if any, is at least as significant a factor in the § 1404(a) balancing." Id. at 499.

The Ninth Circuit has also directed courts to consider private and public interest factors affecting the convenience of a forum. Decker Coal, 805 F.2d at 843. Private interest factors include "the 'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.'" Id. (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)). Public interest factors include "the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; . . . and the unfairness of burdening citizens in an unrelated forum with jury duty." Id.

26

(quoting <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 241 n.6
(1981)).

    The moving party has the burden of showing that an
alternative forum is the more appropriate forum for the action.
<u>Jones</u>, 211 F.3d at 499. Ultimately, the court "must balance the
preference accorded plaintiff's choice of forum with the burden
of litigating in an inconvenient forum." <u>Decker Coal</u>, 805 F.2d at
843. "The defendant must make a strong showing of inconvenience
to warrant upsetting the plaintiff's choice of forum." <u>Id.</u> Having
considered the relevant <u>Jones</u> factors and private and public
interest factors as explained below, the Court finds that
Defendants have met their burden of showing that the District of
Nevada is the more appropriate forum for this action.

**III.A    State most familiar with the governing law**

    To determine which state is most familiar with the law
governing this case, the Court must first determine what state's
law governs.[4/] In diversity cases, federal courts must apply the
choice-of-law rules of the forum state. <u>Estate of Darulis v.
Garate</u>, 401 F.3d 1060, 1062 (9th Cir. 2005). Hawai'i does not
simply follow the Restatement 2d of Conflict of Laws, and in fact
has explicitly disavowed that approach. <u>See</u> <u>Peters v. Peters</u>, 634

---

    [4/]    The outcome of this inquiry also affects the important
question of whether Christopher Corson should be considered a
necessary and indispensable party to this litigation. (<u>See
infra.</u>) The Court will therefore analyze this question in detail.

P.2d 586, 593 (Haw. 1981); <u>Mikelson v. United Servs. Auto. Ass'n</u>, 111 P.3d 601, 608 n.6 (Haw. 2005). Rather, the Hawai'i Supreme Court has adopted "an assessment of the interests and policy factors involved with a purpose of arriving at a desirable result." <u>Peters</u>, 634 P.2d at 593; <u>Mikelson</u>, 111 P.3d at 608 n.6. Hawai'i's choice of law regime presumes that Hawai'i law will apply "unless another state's law would best serve the interests of the states and persons involved." <u>Mikelson</u>, 111 P.3d at 607 (quoting <u>Abramson v. Aetna Cas. & Sur. Co.</u>, 76 F.3d 304, 305 (9th Cir. 1996).)

Defendants persuasively argue that under Hawai'i choice-of-law rules Nevada tort law should apply to the substance of the Kawamuras' claims. (Defs.' Supp. at 6-11.) The attack on Mr. Kawamura – and any negligence by Defendants which may have led to that attack – took place in Nevada. Defendants are Nevada companies operating premises in Nevada according to Nevada laws. Nevada has a strong interest in regulating the care that its hotels take towards people on their premises, and has passed specific statutes to do so. <u>See</u> Nev. Rev. Stat. § 651.015. To have out-of-state law govern a Nevada hotel's standard of care towards people on its premises would contravene the expectations of both the hotel and its guests. <u>See, e.g.</u>, <u>Jenkins v. Whittaker Corp.</u>, 545 F. Supp. 1117, 1118 (D. Haw. 1982) ("[B]ecause so great a portion of Hawaii's population is military, many of whom

28

are legal residents of many different states and many of whom are subject by vocation to the risk of injury, it would provide significant predictability of result to apply the law of Hawaii to product liability actions arising from injury to military personnel in this state.")

The Kawamuras, on the other hand, cannot claim any strong interest in having Hawai'i tort law apply to the substance of their claims; indeed, they concede in their Opposition that "no material difference exists between Nevada and Hawaii law regarding the duty that Defendants owed to the Kawamuras." (Opp. at 30.) The Kawamuras' supplemental briefing mainly addresses the consequences of applying Nevada's apportionment law to the Kawamuras' potential damages. The Court now turns to that issue.

Nevada's tort liability regime differs significantly from Hawai'i's. Under Hawai'i law, in cases arising from personal injury or death, joint tortfeasors are jointly and severally liable for the victim's economic damages. Haw. Rev. Stat. § 663-10.9(1). Thus, if Defendants are found partially responsible for the Kawamuras' injuries, the Kawamuras may recover all of their economic damages from Defendants, upon whom the burden then falls to collect contribution from other tortfeasors as applicable. The Kawamuras may also recover all of their noneconomic damages from Defendants, if Defendants are found to be more than 25% responsible for the Kawamuras' injuries; otherwise, Defendants

are liable only for their assigned percentage of noneconomic
damages. <u>See</u> Haw. Rev. Stat. § 663-10.9(3).

Under Nevada law, on the other hand, negligent
tortfeasors are liable only for the percentage of fault
apportioned to them by the factfinder, Nev. Rev. Stat.
§ 41.141(4), even in cases involving an intentional tortfeasor.
<u>See</u> <u>Café Moda, LLC v. Palma</u>, 272 P.3d 137, 141-42 (Nev. 2012).[5/]
The difference in the Kawamuras' potential recovery under the two
regimes is stark.

The Court is not persuaded that Nevada's law abolishing
joint and several liability in favor of pure apportionment should
apply in this litigation. A court need not apply the same state
law to the whole litigation if the outcome of the choice-of-law
analysis would differ for different, separable parts of the case.
<u>See, e.g.</u>, <u>In re WPMK Corp.</u>, 59 B.R. 991, 995 (D. Haw. 1986)
("The application of more than one law to a choice of law problem
is not unique."); <u>Camp v. Forwarders Transp., Inc.</u>, 537 F. Supp.
636 (C.D. Cal. 1982) (applying Oklahoma law as to traffic laws
and negligence standard, but California law as to joint and

---

[5/]     Nevada's law as applied in <u>Café Moda</u> appears to be an
outlier. "The application of joint and several liability for
indivisible injury is the dominant rule. The Restatement (Third)
of Torts and nearly all states retain joint and several liability
for . . . tortfeasors who negligently fail to protect plaintiffs
from intentional injury by another." Robert S. Peck, <u>The
Development of the Law of Joint and Several Liability</u>, 15 Haw.
Bar J. 4 (May 2011).

several liability and damages). Indeed, it can be error for a
district court to apply one state's law to joint and several
liability simply because it applied that state's law to the
substantive issues. See Thabault v. Chait, 541 F.3d 512, 536 (3d
Cir. 2008).

The Eleventh Circuit, contemplating such a problem,
provided a helpful distinction between states' "conduct-
regulation" rules and "loss-distribution" rules:

> This distinction holds that where a conflicts
> dispute implicates a state's conduct-
> regulation rule (such as a rule of the road),
> a state's interest will usually be triggered
> whenever the regulated conduct or the injury
> occurs in the state. But where a conflicts
> dispute implicates a state's loss-
> distribution rule (such as a limitation of
> damages), a state's interest is triggered not
> by the location of the injury/conduct but,
> rather, by the fact that the action joins the
> state's residents.

Judge v. Am. Motors Corp., 908 F.2d 1565, 1572 n.9 (11th Cir.
1998). Here, Nevada's rules regarding innkeeper liability and
negligence are "conduct-regulation" rules; Nevada has a strong
interest in having those rules applied in this litigation because
all the relevant conduct occurred in Nevada. Hawai'i, by
contrast, has little interest in having its conduct-regulation
rules applied in this case. But Hawai'i has a strong interest in
having its loss-distribution rules applied in this litigation,
because the alleged tort victims are Hawai'i residents. See,
e.g., Villarreal v. Super. Ct., No. B-172327, 2004 WL 902114, at

31

*3 (Cal. App. Apr. 28, 2004) (unpublished) (finding that
California had a substantial interest in applying its rule of
joint and several liability for economic damages, to make sure
that "resident plaintiffs receive all of the damages to which
they are entitled since the economic impact of any shortfall will
be felt in California.'").

The legislative history behind Hawai'i's joint-and-
several liability provision, Haw. Rev. Stat. § 663-10.9 ("Section
10.9"), illustrates Hawai'i's interest. The state legislature
carefully considered the ramifications of Section 10.9 when it
enacted the section in 1986 as part of a larger tort-reform
scheme. Both houses spent a week in special session discussing
the reforms, and the state senate held Saturday hearings at which
more than thirty witnesses testified. (See S. 13-S1-86, Spec.
Sess. 7-31 (Haw. 1986) ("S. Hearings"); H.R. 13-S1-86, H. Spec.
Sess. 7-31 (Haw. 1986) ("H.R. Hearings").) State Representative
Tom, one of the bill's drafters, testified that the bill
deliberately preserved joint and several liability for economic
damages:

> [W]ith the full abolition of joint and
> several, it could be your loved one, or my
> loved one next who is severely injured or
> killed, absent any fault, and how are you
> going to support that loved one? That is
> precisely why economic damages like wages and
> medical bills, present and future, was not
> eliminated by abolishing joint and several.

(H.R. Hearings at 17.) The House Standing Committee Reports noted, "Your Committees believe that recovery of economic damages, such as lost wages, medical expenses, lost future wages, and future medical expenses should not be denied the victim of a tort." (Id. at 37, 43.) The Senate Committee Reports explained, "The rationale for excepting economic damages is that a victim of negligence should not be precluded from complete recovery for damages such as medical expenses and lost wages." (S. Hearings at 28.)

Most importantly, both houses of Hawai'i's state legislature rejected a pure apportionment system like Nevada's. Supporters of pure apportionment argued that it would ensure "fairness to the defendant" and that "the present system allows defendant hunting." (H.R. Hearings at 9-10 (statement of Rep. Liu).) Their opponents argued that pure apportionment would be "an unmitigated disaster for victims." (S. Hearings at 10 (statement of Sen. Cobb).) Both houses explicitly rejected an amendment that would have instituted pure apportionment, and passed Section 10.9 in its current form.

In sum, Hawai'i explicitly rejected the apportionment approach taken by Nevada and instead chose to ensure that Hawai'i's victims of negligence would always obtain "complete recovery" for their economic damages, and in many cases for their noneconomic damages as well. Because of sunset provisions, the

33

legislature re-examined that scheme in 1989, 1991, and 1993, before removing the sunset clause altogether in 1995. Each time, the relevant language of Section 10.9 passed unchanged.

Nevada, of course, has an interest in protecting its residents from having to pay large tort awards for injuries for which they are only partially responsible. The Nevada Supreme Court in Café Moda noted that the Nevada statute was expressly "designed to prevent the 'deep-pocket doctrine.'" Café Moda 272 P.3d at 140 (citation omitted).[6/] The Court finds, however, that in these circumstances Nevada's interest in having its apportionment provision applied cannot overcome the presumption that Hawai'i law should apply, because Nevada's apportionment law would not "best serve the interests of the states and persons involved." Mikelson, 111 P.3d at 607 (citation omitted). Applying Nevada's substantive negligence provisions but Hawai'i's joint-and-several liability provision is consistent with Hawai'i's "flexible approach" which seeks "a desirable result in each

---

[6/]    Though a minor consideration for purposes of this analysis, the Court notes that Café Moda was decided only this spring, nearly two years after the attack on Mr. Kawamura. In its decision, the Nevada Supreme Court noted that the Nevada statute as drafted was "ambiguous" as applied to cases, like the Kawamuras, involving both an intentional and a negligent tortfeasor. (Id.) At the time of the attack on Mr. Kawamura, therefore, Defendants cannot have expected with any certainty that a judgment against them for negligently failing to secure their premises against intentional tortfeasors would be subject to pure apportionment.

situation," taking into account "the interests and policy factors involved." Id.

Having found that Nevada's substantive law but Hawai'i's liability law applies here, the Court finds that this factor slightly favors transfer to the District of Nevada; Hawai'i's joint-and-several-liability statute is straightforward; Nevada's negligence laws likely require a more nuanced understanding of Nevada statutes and case law.

**III.B    Plaintiffs' choice of forum**

"[T]here is normally a strong presumption in favor of honoring the plaintiff's choice of forum." Creative Tech., Ltd. v. Aztech Sys. Pte. Ltd., 61 F.3d 696, 703 (9th Cir. 1995). The Kawamuras are Hawai'i residents and state that they have "no desire to litigate in Nevada." (Opp'n at 30.) This factor weighs against transferring venue.

**III.C    Respective parties' contact with the forum**

Defendants' contacts with Hawai'i are discussed in detail above. While their marketing to and communications with Hawai'i residents are extensive, Defendants have no offices or employees, or personal or real property, in Hawai'i. This factor weighs in favor of transferring venue.

**III.D     Contacts relating to the plaintiff's cause of
            action in the chosen forum**

The majority, if not all, of the evidence relating to
the merits of the Kawamuras' claims appears to be located in Las
Vegas. The majority of the evidence relating to the Kawamuras'
damages, however, appears to be located in Honolulu. In a case
involving simpler injuries that split might weigh strongly in
Defendants' favor. See, e.g., Decter v. MOG Sales, LLC, No. 2:06-
cv-1738, 2006 WL 3703368, at *3 (E.D. Cal. Dec. 14, 2006)
(transferring venue of breach of contract claim where "Plaintiff
claims evidence of his damages is located in California, but
identifies no evidence going to the merits of the claims located
in this state"). In this case, however, the Kawamuras allege that
Mr. Kawamura's injuries required extensive and complex treatment
in Hawai'i. See, e.g., Cypress Drilling, Inc. v. Griffin, Civ.
No. 06-0556, 2006 WL 2177992, at *3 (W.D. La. July 31, 2006)
(where plaintiff argue that damages evidence is central and
defendants argue that site of accident is central, "both will be
relevant in the final determination of this case"); Unicru, Inc.
v. Brenner, No. Civ. 04-248, 2004 WL 785276, at *11 (D. Ore. Apr.
13, 2004) (where merits evidence is located elsewhere but damages
evidence likely will come from Oregon, analysis is neutral). This
factor therefore weighs only slightly in favor of transfer.

**III.E     Costs of litigation**

      The Kawamuras argue, and Defendants do not dispute, that the financial burden on the Kawamuras will be far greater if they are required to litigate in Nevada. As the Kawamuras point out, Defendants' claims about the inconvenience of having their own employees testify in Hawai'i may be "discounted". <u>Tamashiro v. Harvey</u>, 487 F. Supp. 2d 1162, 1171 (citing 15 Charles A. Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 3851 (2d ed. 1986)). The Court notes, however, that Defendants have graciously offered to provide free lodging and meals for the Kawamuras for the duration of trial if the litigation moves to Las Vegas. (Defs.' Supp. at 18.) Moreover, in this age of e-discovery, the location of documentary evidence is no longer persuasive, and depositions and even testimony may be taken via videoconference. This factor is neutral.

**III.F     Availability of compulsory process**

      As discussed above, the Court may reach Christopher Corson via a writ of habeas corpus ad testificandum, if necessary. The parties have not identified any other witness who would need to be compelled to testify. This factor is neutral.

**III.G     Convenience of the witnesses**

      As discussed above, both sides have produced long lists of potential witnesses. It appears that approximately twenty Las Vegas-based witnesses may be required to testify about the events

of May 25-26, 2010 and about Defendants' security provisions, while approximately twenty more Honolulu-based witnesses may be required to testify as to the Kawamuras' damages. Neither party has presented evidence that any of these witnesses would be unwilling to testify. This factor is neutral.

**III.H     Ease of access to proof**

Defendants argue that the factfinder in this dispute likely will need to visit the site of the crime because "one of the foremost disputed facts" at trial will be "the location and adequacy of lighting" around the restroom where Mr. Kawamura was attacked. (Motion at 27.) The Kawamuras counter that "the 'foremost disputed fact' is not the adequacy of the lighting near the restroom, but whether Defendants provided sufficient security for and/or surveillance of the area," which may be conveyed by live or deposition testimony. (Opp. at 33.) The Kawamuras' distinction does not hold water; presumably the amount of security and surveillance that is "sufficient" for an area depends in part on how well-lit the area is. Indeed, the Kawamuras' claims against Defendants turn in part on their allegations that the restroom was "tucked away at the end of a long, dark and isolated corridor" which Corson was able to reach and hide in "unimpeded" and "undetected." (Compl. ¶ 1; see id. ¶ 15 ("Calvin had to . . . walk to the end of a long, dark, isolated corridor.")

It is certainly possible that the trial judge will find it appropriate for the factfinder to visit the site. This factor weighs in favor of transfer.

**III.I     Other practical problems**

Defendants raise an important potential practical problem. Defendants wish to file a third-party complaint against Christopher Corson. Defendants allege that this Court does not have personal jurisdiction over Corson, and Plaintiffs have presented no evidence to suggest otherwise.

Defendants raised in their papers the possibility that Corson might be a necessary and indispensable party under Rule 19. (Reply at 6.) The Court therefore had the parties file supplemental briefing as to this issue.

The District of Nevada noted in dicta in <u>Blanco v. Circus Circus Casinos</u> that the Nevada Supreme Court's ruling in <u>Café Moda</u> would likely transform any intentional tortfeasor who was jointly liable with a negligent party into a necessary and indispensable party, so that the court could properly administer Nevada's apportionment statute. Civ. No. 10-02198, 2012 WL 1900942, at *5 (D. Nev. May 24, 2012). As the Kawamuras note, however, <u>Blanco</u> applies here only if Nevada's apportionment statute would be applied in this litigation. (Kawamura Supp. at 16.) The Court has determined that Hawai'i's choice-of-law rules would not apply Nevada's apportionment statute. (<u>See</u> <u>supra</u>.)

Blanco's dicta is therefore inapplicable here. It is well-established that in ordinary circumstances a joint tortfeasor is not an indispensable party under Rule 19. See, e.g., Union Paving Co. v. Downer Corp., 276 F.2d 468, 471 (9th Cir. 1960); Behrens v. Donnelly, 236 F.R.D. 509, 515 (D. Haw. 2006).

Nonetheless, Defendants' desire to implead Corson is a factor which, although not determinative, strongly favors transferring the litigation to Nevada. See Sparling v. Hoffman Const. Co., 864 F.2d 635, 639 (9th Cir. 1988) (affirming transfer of litigation where likely third-party defendant probably would not be subject to personal jurisdiction in the district); Hervey v. United States, 450 F. Supp. 1148, 1149 (E.D. Wisc. 1978) (denying motion to transfer and noting that "[t]he ability . . . to implead third parties in the transferee forum . . . [is] relevant and important but not determinative"). Avoidance of a multiplicity of litigation is an important factor in determining what "the interests of justice" require. See Cont'l Grain Co. v. Barge FBL-585, 364 U.S. 19, 20-21 (1960) (finding transfer of case under 28 U.S.C. § 1404(a) so that two lawsuits arising from single occurrence would be heard in same venue to be "in the interest of justice".)

District courts across the country have frequently transferred venue to allow a defendant to implead a party who is not subject to personal jurisdiction in the transferor court.

40

See, e.g., Kay v. Nat'l City Mortg. Co., 494 F. Supp. 2d 845,
854-55 (S.D. Ohio 2007) (transferring venue to allow impleading
of a third-party defendant); Posven, C.A. v. Liberty Mut. Ins.
Co., 303 F. Supp. 2d 391, 406 (S.D.N.Y. 2004) (same); Biggers v.
Borden, Inc., 475 F. Supp. 333, 337 (E.D. Pa. 1979) (same);
United States v. Casey, 420 F. Supp. 273, 277 (S.D. Ga. 1976)
(same).

When a district court has elected not to transfer venue
to allow defendant to implead a third party, the court has
generally found that defendant's potential third-party claim was
only vaguely delineated or was not closely related to the instant
litigation. See, e.g., Houk v. Kimberly-Clark Corp., 613 F. Supp.
923, 931 (W.D. Mo. 1985) (ability to implead third-party
defendant diminished in importance where it is not clear that
same evidence would be required to establish third-party claim);
Busch, 95 F.R.D. at 341 (denying transfer where third party claim
was merely "possible" and defendant was otherwise vague as to
non-party witnesses who might reside out-of-state). That is not
the case here. This factor therefore weighs strongly in favor of
transferring venue.

**III.J    Imposition of jury duty on people that have no relation
           to litigation & local interest in having localized
           controversies decided at home**

Hawai'i has an interest in determining whether its
residents are negligently subjected to danger at a hotel chain

41

which admittedly target Hawai'i residents and which many Hawai'i residents patronize. Nevada has an interest in determining whether a Nevada hotel is negligently exposing guests to danger. These factors do not weigh strongly in favor of either side.

**III.K    Conclusion regarding transfer of venue**

The Court weighs all of the above factors and concludes that this action should be transferred to the District of Nevada in order to allow Defendants to implead Christopher Corson.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Defendants' Motion To Dismiss for Lack of Personal Jurisdiction and/or Improper Venue, or in the Alternative To Transfer Venue. The Court will not dismiss Plaintiffs' Complaint, but orders that this action be TRANSFERRED to the District of Nevada.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, December 5, 2012.

Alan C. Kay
Sr. United States District Judge

<u>Kawamura v. Boyd Gaming Corp.</u>, Civ. No. 12-00294 ACK-BMK, Order Granting in Part and Denying in Part Defendants' Motion To Dismiss for Lack of Personal Jurisdiction and/or Improper Venue, or in the Alternative To Transfer Venue.