1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CALVIN KAWAMURA, et al., | 2:13-CV-203 JCM (GWF) |
| Plaintiff(s), | |
| v. | |
| BOYD GAMING CORPORATION, et al., | |
| Defendant(s). | |

**ORDER**

Presently before the court is defendants Boyd Gaming Corporation's ("Boyd") and M.S.W. Inc. d/b/a Main Street Station Casino, Brewery, and Hotel's ("Main Street Station") motion to reconsider, rescind, or modify the interlocutory order of the Hawaii district court.  (Doc. # 58). Plaintiffs Calvin and Jeanie Kawamura have filed a response (doc. # 66) and defendants have filed a reply (doc. # 71).

Also before the court is plaintiffs' motion to retransfer venue.  (Doc. # 67).  Defendants have filed a response (doc. # 72) and plaintiffs have filed a reply (doc. # 75).

**I.  Background**

*A.  Factual*

Spouses Calvin and Jeanie Kawamura (collectively "the Kawamuras") are residents of the state of Hawaii.  The Kawamuras were vacationing in Las Vegas in May 2010 when the events giving rise to this lawsuit occurred.

James C. Mahan
U.S. District Judge

On or about May 26, 2010, plaintiffs were gambling on the main casino floor of the Main Street Station in downtown Las Vegas. At some point during the late evening or early morning hours, Calvin left Jeanie in search of the men's restroom. While in the restroom, Calvin was assaulted, robbed, and knocked unconscious by an individual later identified as Christopher Corson ("Corson"). Corson was a homeless individual and had allegedly been hiding out in the men's restroom.

Calvin was transported to the emergency room where he underwent several x-rays and CT scans. It was determined that Calvin sustained multiple fractures to his face and skull, and that his brain was bleeding.

While waiting for Calvin in the emergency room, and allegedly overwhelmed by emotion, Jeanie began feeling faint and subsequently collapsed. Doctors admitted Jeanie to the hospital and administered various tests.

Calvin was discharged from the hospital on May 29, 2010, and the couple returned to Hawaii on June 2, 2010. Calvin continued to experience complications from the assault, which required him to undergo additional CT scans and multiple burr hole evacuations.[1] Plaintiffs allege that they live in constant fear that Calvin will suffer another brain bleed, are always "on edge," and that Calvin's cognitive abilities have declined significantly as a result of the attack.

*B. Procedural*

This case was originally filed in the United States District Court for the District of Hawaii. The complaint states claims for relief for negligence, innkeeper liability, premises liability, negligent infliction of emotional distress, and gross negligence. Defendants filed a motion to dismiss for lack of jurisdiction and/or improper venue or, alternatively, a motion to transfer venue. (Doc. # 5). United States District Court Judge Alan Kay issued an order denying in part and granting in part defendants' motion. (Doc. # 31). Judge Kay held that the District of Hawaii had personal jurisdiction over defendants and that venue in Hawaii was proper, but ultimately found that it was

---

[1] A burr hole evacuation is a medical procedure in which a hole is drilled into the patient's skull in order to remove blood clots forming in the brain.

1    in the interests of justice to transfer the action to the District of Nevada. *Id.*

2    After the case was transferred to this district, defendants filed a motion to reconsider, rescind,

3    or modify the Hawaii district court's order.  (Doc. # 58).  Defendants agree with Judge Kay's

4    decision to transfer venue.  However, they disagree with several of his other findings.  In addition

5    to opposing defendants' motion, plaintiffs filed a motion to retransfer the case back to Hawaii (doc.

6    # 67), arguing that it is proper for Judge Kay to decide defendants' motion, and not this court.

7    Defendants, of course, oppose the motion to retransfer.

8    **II.    Discussion**

9    Because a decision on the motion to retransfer will decide which court resolves the motion

10   to reconsider, rescind, or modify, the court will address it first.

11   *A.  Motion to retransfer*

12   Plaintiffs have filed a motion to retransfer venue, asserting that (1) the matter should be re-

13   transferred so that Judge Kay may clarify the purpose behind the original transfer; and (2) so that

14   Judge Kay may decide defendants' motion to reconsider, rescind, or modify.  Defendants respond

15   that this court has jurisdiction for all post-transfer motions, not the District of Hawaii.  Each party

16   has accused the other of engaging in blatant forum shopping.

17   At issue are two federal provisions providing for transfers.  First,"[f]or the convenience of

18   parties and witnesses, in the interest of justice, a district court may transfer any civil action to any

19   other district or division where it might have been brought or to any district or division to which all

20   parties have consented." 28 U.S.C. § 1404(a).  In addition, "[t]he district court of a district in which

21   is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest

22   of justice, transfer such case to any district or division in which it could have been brought" in order

23   to cure defects.  28 U.S.C. § 1406(a).

24   Plaintiffs assert that Judge Kay transferred the case under 28 U.S.C § 1404(a) merely for the

25   convenience of the parties and witnesses.  In response, defendants argue Judge Kay transferred the

26   case pursuant to 28 U.S.C. § 1406(a) in order to cure a defect in jurisdiction over the individual

27   tortfeasor, Christopher Corson.  Both parties assert that which statute the case was transferred under

28

**James C. Mahan**
**U.S. District Judge**

- 3 -

1    may affect the analysis of the applicable law.

2          In general, motions to retransfer a case are disfavored by courts.  *See, e.g., Christianson v.*

3    *Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988).  Upon review, the court notes that the body

4    of the transfer order engaged in an analysis under § 1404(a).  Thus although not plain, it is clear

5    enough to this court that Judge Kay transferred the case to this district for the convenience of the

6    parties.

7          The court declines to play litigation ping-pong, sending this case back and forth between

8    Honolulu and Las Vegas.  Judge Kay ordered that the case be transferred to this district under §

9    1404(a), and this district is where all motions will be resolved.  However, that does not necessarily

10   mean this court is bound by Judge Kay's findings, as discussed below.

11          *B.  Motion to reconsider, rescind, or modify*

12          The parties disagree as to which state's–Nevada's or Hawaii's–loss-distribution rules apply.

13   In his transfer order, Judge Kay determined that Nevada's tort laws, but Hawaii's loss-distribution

14   rules, should apply.  The defendants now ask this court to modify that order and instead apply

15   Nevada's loss-distribution rules.

16          In analyzing this issue, the Hawaii court held with respect to the application of Hawaii's loss-

17   distribution rules:

18

19          The Court is not persuaded that Nevada's law abolishing joint and
             several liability in favor of pure apportionment should apply in this
20           litigation. . .

21          Nevada's rules regarding innkeeper liability and negligence are
             'conduct-regulation' rules; Nevada has a strong interest in having
22           those rules applied in this litigation because all the relevant conduct
             occurred in Nevada.  Hawai'i, by contrast, has little interest in having
23           its conduct-regulation rules applied in this case.  But Hawai'i has a
             strong interest in having its loss-distribution rules applied in this
24           litigation, because the alleged tort victims are Hawai'i residents. . .

25          Nevada, of course, has an interest in protecting its residents from
             having to pay large tort awards for injuries for which they are only
26           partially responsible. . .

27
     (Transfer order, doc. # 31, section III.A).
28

James C. Mahan
U.S. District Judge                                          - 4 -

1    However, in discussing the application of Nevada's tort laws, the Hawaii court held in relevant part:

2

3         Defendants persuasively argue that under Hawai'i choice-of-law rules
          Nevada tort law should apply to the substance of the Kawamuras'
4         claims.   The attack on Mr. Kawamura–and any negligence by
          Defendants which may have led to that attack–took place in Nevada.
5         Defendants are Nevada companies operating premises in Nevada
          according to Nevada laws.  Nevada has a strong interest in regulating
6         the care that its hotels take towards people on their premises, and has
          passed specific statutes to do so.  To have out-of-state law govern a
7         Nevada hotel's standard of care towards people on its premises would
          contravene the expectations of both the hotel and its guests.
8

9    (Transfer order, doc. # 31, at p. 28) (internal citations omitted).

10          Defendants' argument that the rationale behind the application of Nevada's tort laws should

11   apply with equal force to the application of its loss-distribution rules is well taken.  The court finds

12   that Judge Kay's choice of law analysis is rendered inoperative under applicable Ninth Circuit law,

13   because the transfer had the effect of curing jurisdiction over Corson.

14          In circumstances similar to these, the Ninth Circuit has held that "[a]lthough [a transferor

15   court] purported to transfer the case under Sec. 1404(a) for the convenience of the parties, its

16   characterization of the transfer is not controlling.  If the transfer had the effect of curing a defect in

17   personal jurisdiction, and if [the defendants] have not waived any objection to the transferor court's

18   in personam jurisdiction, then the choice-of-law rules of the transferee jurisdiction should be

19   applied." *Muldoon v. Tropitone Furniture Co, et al*, 1 F.3d 964, 966-67 (9th Cir. 1993) (citing *Davis*

20   *v. Louisiana State Univ.,* 876 F.2d 412, 414 (5th Cir. 1989)(per curiam)).[2]

21          Although this case was purportedly transferred under §1404(a) for the convenience of the

22   parties, it had the practical effect of curing a defect in personal jurisdiction over the individual

23   _____

24        [2]  In response, plaintiffs attempt to distinguish cases cited by the defendants on the grounds that those cases
     involved named third-party defendants.  Even if the court accepts this argument, the end result is the same.  It is clear
25   that the court retains the inherent power to modify the orders of concurrent courts where they are "clearly erroneous and
     would work a manifest injustice."  *Arizona v. California,* 460 U.S., at 618, n. 8, 103 S.Ct., at 1391, n. 8.  Situations might
26   arise, of course, in which the transferee court considers the transfer "clearly erroneous."  *Id*.  Such a situation exists here.
     To permit out of state residents to drag their respective state's loss-distribution rules with them every time they visit a
27   casino or hotel in Nevada would practically render Nevada's own statutory loss-distribution scheme worthless.  Such
     a result would work a manifest injustice on Nevada's hotel and casino businesses, and in practice permit other state's
28   legislatures to govern Nevada's own.

James C. Mahan
U.S. District Judge

- 5 -

1    tortfeasor, Corson.³  As a result, this court is not bound by the Hawaii court's characterization of the

2    transfer, and Nevada choice-of-law rules apply.  *Muldoon,* 1 F.3d at 967.

3         Plaintiffs' argument that the motion was not timely filed pursuant to Hawaii's local rules is

4    without merit.  In light of *Muldoon,* the fact that the transfer has the effect of curing jurisdiction over

5    Corson results in the automatic application of this jurisdiction's choice of law rules, regardless of

6    whether the motion to reconsider, rescind, or modify was timely filed pursuant to Hawaii's local

7    rules.  In any event, the court has the inherent power to revisit or reconsider interlocutory orders at

8    any time prior to the entry of final judgment.  *See, e.g., Conboy v. Wynn Las Vegas, LLC,* 2013 WL

9    1500958 (D. Nev. Apr. 10, 2013) (citing *City of Los Angeles, Harbor Div. v. Santa Monica*

10   *Baykeeper,* 254 F.3d 882, 889 (9th Cir. 2001)).

11        In addition to their timeliness objection, plaintiffs further oppose modification on the grounds

12   that overruling the transfer order would "usurp the Ninth Circuit Court of Appeals' appellate

13   function."  However, "[a] court has the power to revisit prior decisions of its own or of a coordinate

14   court in any circumstance. . ." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817-18

15   (1988) (citing *Arizona v. California, supra,* 460 U.S. at 618, n. 8, 103 S.Ct., at 1391, n. 8)).

16        Even if the transfer order constituted the law of the case, that doctrine "merely expresses the

17   practice of courts generally to refuse to reopen what has been decided, [and is] not a limit on their

18   power." *Christianson*, 460 U.S. at 802.  This court would therefore be within its power to overrule

19   the transfer order even if its curative effect did not automatically apply Nevada choice-of-law rules,

20   all without offending the Ninth Circuit's appellate function.  Plaintiffs' argument that the motion "is

21   not properly before this court" is thus without merit for the same reasons.

22                          1.  Nevada's choice-of-law rules

23        Nevada's choice-of-law jurisprudence in tort actions is governed by the most significant

24   relationship test, as provided by the Restatement (Second) of Conflict of Laws § 145, unless a more

25   specific subsection applies.  *General Motors Corp. v. Eighth Judicial Dist. Court of State of Nev.*

26

27        ³  It is undisputed that the District of Hawaii does not have personal jurisdiction over Christopher Corson as
     a third-party defendant in this case.  Defendants have named Corson upon transfer and sought default judgment against
28   him.

James C. Mahan
U.S. District Judge                                          - 6 -

*ex rel. County of Clark*, 122 Nev. 466 (2006).  In actions based in personal injury, including negligence, strict liability, and emotional distress, as here, Section 146 specifically governs.  *See* Restatement (Second) of Conflict of Laws § 146; *Wyeth v. Rowatt*, 244 P.3d 765 (Nev. 2010).  That section provides:

> In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws § 146 (1971).

Section 6 of the Restatement identifies the following general principles:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
>
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
>
>> (a) the needs of the interstate and international systems,
>>
>> (b) the relevant policies of the forum,
>>
>> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>>
>> (d) the protection of justified expectations,
>>
>> (e) the basic policies underlying the particular field of law,
>>
>> (f) certainty, predictability and uniformity of result, and
>>
>> (g) ease in the determination and application of the law to be applied.
>
> These principles are not intended to be exclusive and no one principle is weighed more heavily than another.

Restatement (Second) of Conflict of Laws § 6 (1971).

Under section 146, the rights of the Kawamuras and the liability of the defendants are determined by Nevada law unless Hawaii can be said to have a more significant relationship under

James C. Mahan
U.S. District Judge

- 7 -

1    the principles set forth in section 6.

2           The needs of interstate and international systems and the basic policies underlying this

3    particular field of law are not favor of Nevada any more than they are of Hawaii.  To the extent these

4    two factors ((a) and (e)) are applicable here they are neutral.

5           Likewise, the relevant policies of Nevada and Hawaii neutralize one another.  On one hand,

6    Nevada has an interest in protecting its businesses, and on the other, Hawaii has an equally strong

7    interest in protecting its citizens (including maximizing their potential recovery).  These two factors

8    ((b) and (c)) are neutral.

9           The protection of justified expectations strongly favors applying Nevada law.  Nevada has

10   a justified expectation that its tort *and* loss-distribution rules will be applied to conduct and injuries

11   occurring in Nevada and in actions against Nevada defendants.  As the Hawaii court recognized, the

12   Nevada legislature has passed specific statutes in order to prevent plaintiffs, whether they be in or

13   out of state, in these circumstances from obtaining "deep-pocket" judgments against Nevada hotels

14   and casinos.  The legislature has adopted a statute specifically curbing the potential for "deep-

15   pocket" recovery.  *See* NRS 41.141.[4]  In applying the statute, Nevada courts have emphasized the

16   legislature's intent in subsequent decisions.  *See, e.g., Café Moda, LLC v. Palma*, 272 P.3d 137 (Nev.

17   2012) (noting the statute was expressly designed to prevent the "deep-pocket doctrine").[5]  Nevada

18   businesses have a justified expectation they will be held accountable under Nevada loss

19   apportionment law.  On the other hand, out of state visitors do not have a justifiable expectation that

20   they will bring their state's laws with them when they travel to Nevada.  In situations such as this

21   one, allowing out of state plaintiffs to drag their state's loss-distribution laws with them when they

22

23           [4] Nevada's comparative negligence statute provides that "[w]here recovery is allowed against more than one
24   defendant in such an action, except as otherwise provided in subsection 5, each defendant is severally liable to the
     plaintiff *only for that portion of the judgment which represents the percentage of negligence attributable to that*
25   *defendant.*" NRS 41.141(4) (emphasis added).  Hawaii has explicitly rejected Nevada's apportionment approach, instead
     adopting a joint and several liability scheme.  The difference in the Kawamura's potential recovery is stark under the two
26   approaches.

27           [5] The Hawaii court dismissed the Nevada Supreme Court's decision in *Café Moda* in a footnote, supported that
     dismissal with a citation to a Hawaii law review article, and dismissed Nevada's scheme as an "outlier." (Transfer order,
28   doc. # 31, p. 30 n. 5).

James C. Mahan
U.S. District Judge

come to "stay and play" in Nevada would, in practice, permit those state's legislatures to usurp Nevada's own.  This factor favors the application of Nevada law.

Applying Nevada law to this action also furthers the certainty, predictability, and uniformity of results.  It should be noted that the conduct at issue is not merely defendants' act of marketing in Hawaii.  Rather, the conduct complained of is defendants' alleged inaction in negligently failing to provide a secure environment on property located in Nevada.  Thus, both the conduct and injury occurred in Nevada.  When the conduct and injury occur in one state, common sense dictates that applying that state's law provides certainty, predictability, and uniformity to future incidents whose conduct and injury occur in the same state.  This factor favors applying Nevada law.

Finally, the ease in the determination and application of the law to be applied favors Nevada law.  Nevada courts are obviously most familiar with Nevada law.  However as touched on *infra* note 4, Nevada and Hawaii's loss-distribution schemes, although different, are not particularly complicated or difficult to apply.  This factor only slightly favors the application of Nevada law.

In consideration of the foregoing factors, the court concludes that Hawaii does not have a more significant relationship to this litigation which would warrant application of Hawaii law.

**III.  Conclusion**

The court declines to retransfer the case to Hawaii.  Furthermore, the court rejects Judge Kay's conclusions regarding which state's loss-distribution rules apply.  This action will be litigated in Nevada, and Nevada's tort and loss-distribution rules will govern.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiffs' motion to retransfer venue (doc. # 67) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that defendants' motion to reconsider, rescind, or modify (doc. # 58) be, and the same hereby is, GRANTED consistent with the foregoing.

DATED February 12, 2014.

_____
**UNITED STATES DISTRICT JUDGE**

James C. Mahan
U.S. District Judge

- 9 -