1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

CALVIN KAWAMURA and JEANIE
KAWAMURA,

        Plaintiffs,

vs.

BOYD GAMING CORPORATION, *et al.*,

        Defendants.

Case No.  2:13-cv-00203-JCM-GWF

**ORDER**

**Motion to Compel Production of
Documents - #131**

This matter is before the Court on Plaintiffs' Motion to Compel Production of Documents
(#131), filed on May 8, 2014.  The Court conducted a hearing in this matter on August 8, 2014.

**BACKGROUND**

On May 26, 2010, at approximately 3:00 A.M., Plaintiff Calvin Kawamura was assaulted,
knocked unconscious, and robbed in a restroom of the Main Street Station Casino Brewery Hotel
("Main Street Station").  According to the Complaint, Mr. Kawamura and his wife, who were
registered overnight guests of Main Street Station, were playing slot machines on the main casino
floor.  Mr. Kawamura left his wife to go to the nearest restroom which was located at "the end of a
long, dark, isolated corridor." *Complaint (#1)*, ¶ 15.  He was attacked in the restroom by
Christopher Corson, an allegedly homeless person with a significant criminal record.  ¶ 17.  Mr.
Corson was subsequently apprehended, convicted and sent to prison for the criminal attack on Mr.
Kawamura.

Plaintiffs filed this action against Boyd Gaming Corporation, a Nevada corporation, and
M.S.W., Inc., a Nevada corporation, doing business as Main Street Station Casino Brewery Hotel
. . .

on May 24, 2012.[1]  Plaintiffs allege causes of action for negligence, innkeeper liability, premises liability, negligent infliction of emotional distress, and gross negligence/punitive damages. *Complaint (#1), Counts I through V*.  All of these claims are based on the Defendants' alleged failure to protect Mr. Kawamura against the criminal attack perpetrated by Mr. Corson.

Boyd Gaming Corporation ("Boyd") is the parent company of M.S.W., Inc.  Boyd or its subsidiary companies own and operate several hotel casino properties in Southern Nevada.  The other Boyd properties located in the Downtown area of Las Vegas are the California Hotel and Casino ("California Hotel") and the Fremont Hotel and Casino  ("Fremont Hotel").  Main Street Station is located on the west side of Main Street.  It is bordered on the south by Ogden Street, and on the north by an elevated freeway.  The California Hotel is located on the east side of Main Street between Ogden and Stewart Streets.  A portion of the California Hotel building is directly across the street from the Main Street Station building.  The two buildings are connected by an elevated pedestrian walkway above Main Street.  The Fremont Hotel is located approximately one block south and two blocks east of Main Street Station.

According to the Defendants, Main Street Station, the California Hotel, and the Fremont Hotel each have their own security departments and staffs of security officers and supervisors.  Jim Daugherty is the current Director of Security for the "Downtown Region of Boyd Gaming Corporation." which includes Main Street Station, the California Hotel and the Fremont Hotel (also referred to as the "Downtown properties"). *Defendants' Sur-Reply (#155), Exhibit B, Affidavit of Jim Daugherty*, ¶ 1.  Mr. Daugherty became Chief of Security at Main Street Station in 1996.  ¶ 5.  In 1999, he was placed in charge of security for both Main Street Station and the California Hotel.  ¶ 6.  In 2002, he was placed in charge of security for all three Downtown properties.  ¶ 7.  It was not until "around the year 2004 that security officers from one property might be assigned to another hotel's security department, when it is necessary to 'fill in' for an empty spot, due to illness or vacation of a regular security officer."  ¶ 9.

---

[1] The action was originally filed in the United States District Court, for the District of Hawaii, where Plaintiffs reside.  It was transferred to the District of Nevada on December 5, 2012. *Order (#31)*.

1    Defendants state that since 2008 security forces at each hotel have used the "ITRAK"

2  software system to report incidents which occur at each property. *Daugherty Affidavit*, ¶ 11. *See*

3  *also Defendants' Sur-Reply (#155), Exhibit A, Affidavit of John Diebold*, ¶ 4.  ITRAK is a

4  searchable computer program which allows a person to locate particular types of incident reports

5  through word searches for terms such as "assault," "battery," "robbery," etc.  Between 2004 and

6  2008, the Downtown properties used a software program known as "Access" to record and

7  maintain records relating to security incidents on the properties. *Diebold Affidavit*, ¶ 5, *Daugherty*

8  *Affidavit*, ¶ 12.  "Prior to 2004, security incident reports were hand-written or typed out on a

9  template.  Some of the reports were scanned and entered into prior existing computer programs.

10  However, not all reports were done this way.  Hard copies were kept in boxes at each property or at

11  Boyd Gaming Corporation's various storage units." *Diebold Affidavit*, ¶ 6.

12    Mr. Diebold further states:

13        Your Affiant can attest that, with regard to records prior to 2004,
        neither Boyd Gaming Corporation nor its subsidiaries have the ability
14        to search for information based upon the categories stated in
        paragraph 7 above [i.e., computer word searches].  The records, if
15        they exist, prior to 2004 can only be searched by name and/or
        incident number, and this is regardless of whether the search is
16        performed manually (physically searching each box) or by searching
        through any previously used software system.

17    *Diebold Affidavit*, ¶ 8.

18

19    Defendants indicate that incident reports entered and stored in the Access system between

20  2004 and 2008 are also not word searchable.

21    On or about August 13, 2012, Plaintiffs served Defendants with requests for production of

22  documents, which included the following two requests:

23        3.    Any and all documents, concerning, referring, or relating to
        any physical attacks, assaults, batteries, sexual assaults, robberies,
24        and/or murders, occurring in or near the Restroom from January 1,
        1996 through the present, including but not limited to surveillance
25        videos, incident reports, witness interviews, and/or internal
        investigations conducted by you and/or Defendant [Main Street or
26        Boyd].

27        4.    Any and all documents, concerning, referring, or relating to
        any physical attacks, assaults, batteries, sexual assaults, robberies,
28        and/or murders, occurring on the premises of hotels and/or casinos

1    operated by Defendants in the Downtown Las Vegas area, including, but not limited to, the California Hotel and Casino, the Fremont
2    Hotel and Casino, and the Main Street Station Casino Brewery Hotel, from January 1, 1996 through the present, including but not limited
3    to surveillance videos, incident reports, witness interviews, and/or internal investigations conducted by you and/or Defendant [Main
4    Street or Boyd].

5    According to Plaintiffs, "Defendants submitted their Responses to the First RPOD's on

6    September 12, 2012 which included some records responsive to Request No. 3, but none

7    responsive to Request No. 4."  Neither party has provided the Court with Defendants' actual

8    responses to the requests for production.  Based on their exchange of correspondence and motion

9    briefs, the Court understands that Defendants objected to Request Nos. 3 and 4 on the grounds of

10    lack of relevancy and over breath.  In particular, Defendants argue that the requests are overbroad

11    and irrelevant with respect to the types of prior incidents sought, the time period covered by the

12    requests, and the properties included in Request No. 4.  Plaintiffs move to compel Defendants to

13    produce records regarding prior incidents within the scope of the foregoing requests for production.

14    **DISCUSSION**

15    The liability of a hotel/casino proprietor for criminal acts committed by third persons on its

16    premises is governed by Nevada Revised Statute (NRS) 651.015, which provide as follows:

17        2.    An owner or keeper of any hotel, inn, motel, motor court, boardinghouse or lodging house is civilly liable for the death or
18    injury of a patron or other person on the premises caused by another person who is not an employee under the control and supervision of
19    the owner or keeper if:

20        (a)    The wrongful act which caused the death or injury was foreseeable; and

21

22        (b)    The owner or keeper failed to take reasonable precautions against the foreseeable wrongful act.

23    The court shall determine as a matter of law whether the wrongful act was foreseeable and whether the owner or keeper had a duty to take
24    reasonable precautions against the foreseeable wrongful act of the person who caused the death or injury.

25        3.    For purposes of this section, a wrongful act is not foreseeable
26    unless:

27        (a)    The owner or keeper failed to exercise due care for the safety of the patron or other person on the premises; or

28

1           (b)     Prior incidents of similar wrongful acts occurred on
     the premises and the owner or keeper had knowledge or notice of
2    those incidents.

3    NRS 651.005 states:

4         As used in NRS 651.005 to 651.040, inclusive, "premises" includes,
     but is not limited to, all buildings, improvements, equipment and
5    facilities, including any parking lot, recreational facility or other land,
     used or maintained in connection with a hotel, inn, motel, motor
6    court, boarding house or lodging house.

7    In *Estate of Smith v. Mahoney's Silver Nugget*, 127 Nev.Adv.Op. 76, 265 P.3d 688, 692

8    (2011), the Nevada Supreme Court noted that NRS 651.015.3(b) "does not provide any guidance as

9    to which acts should be considered similar." Turning to the legislative history of NRS 651.015, the

10   Court stated:

11        The drafters of the provision explained that such ambiguity was
     deliberate:
12
13             When we crafted this language we used the term "similar" for
     purposes associated with its common usage. That is, letting
     the judge decide whether in fact the particular wrongful act
14   was similar to another wrongful act.... The phrase we used
     was chosen very specifically to allow the judge to have some
15   leeway to make the determination as to whether they were
     alike and that is the way the bill was drafted.
16        . . .

17        The legislative history proceeds to document several hypothetical
     situations that implicitly recognize the distinction between events
18   occurring in the inner versus the outer areas of a casino, as well as the
     contrast in different levels of violence. *Id.* (noting the dissimilarities
19   between an armed robbery in a casino elevator as compared to a car
     burglary in the parking lot). One possible explanation for these
20   distinctions in determining the similarity of two events relates to a
     question of whether the events involve similar security issues. *Id.*
21   (noting that casinos in different towns should not be considered
     similar because "[t]hey are not similar in the way they handle
22   security").

23   *Id.* at 692-93, quoting Hearing on S.B. 474 Before the Assembly Judiciary Comm., 68th

24   Leg. (Nev., June 10, 1995).

25        The issue presently before the court is not whether a particular prior criminal or wrongful

26   act is admissible to prove the foreseeability of the attack on Plaintiff. Rather, the issue is the

27   appropriate scope of discovery aimed at identifying such prior incidents. Under Rule 26(b) of the

28   Federal Rules of Civil Procedure, relevant information need not be admissible at trial, if it appears

1    reasonably calculated to lead to the discovery of admissible evidence.  Accordingly, relevancy

2    under Rule 26 is liberally construed.  *See Partner Weekly, LLC v. Viable Marketing Corp.*, 2014

3    WL 1577486, *2 (D.Nev. 2014) and *Painters Joint Committee v. Employee Painters Trust Health

4    & Welfare Fund*, 2011 WL 4573349, *5 (D.Nev. 2011).  The party opposing discovery bears the

5    burden of showing that it is overly broad and unduly burdensome, or not relevant.  *Painters Joint

6    Committee, supra*, citing *Graham v. Casey's General Stores*, 206 F.R.D. 251, 254 (S.D. Ind. 2002).

7          In *Lohr v. Stanley-Bostitch*, 135 F.R.D. 162, 164 (W.D. Mich. 1991), the court described

8    the boundaries of discovery of prior similar incidents in the context of a products defect case as

9    follows:

10                  In order to be entitled to discovery concerning other incidents,
                    plaintiff need not lay the same foundation concerning substantial
11                  similarity as would be necessary to support admission into evidence.
                    *See Uitts v. General Motors Corp.*, 58 F.R.D. 450, 452-53 (E.D.Pa.
12                  1972).  For discovery purposes, the court need only find that the
                    circumstances regarding the other incidents are similar enough that
13                  discovery concerning those incidents is reasonably calculated to lead
                    to the uncovering of substantially similar occurrences. (citations
14                  omitted).

15          *See also Briney v. Deer & Co.*, 150 F.R.D. 159, 164 (S.D. Iowa 1993); *Perez Librado v.

16   M.S. Carriers, Inc.*, 2003 WL 21075918, *3 (N.D. Tex. 2003) and *A.H. ex rel Hadjih v. Evenflo

17   Co. Inc.*, 2011 WL 3684807, *4 (D. Colo. 2011).

18          The instant motion raises issues regarding the relevancy of (1) the type of the prior

19   incidents; (2) the time period during which the incidents occurred; and (3) the premises on which

20   the incidents occurred.  Depending on the scope of discovery permitted, Defendants also assert that

21   it may be unduly burdensome to locate and produce documents responsive to the requests.

22          **1.    Type of Prior Incidents**

23          Plaintiffs seek documents "relating to any physical attacks, assaults, batteries, sexual

24   assaults, robberies, and/or murders" that occurred near the restroom or on the premises of the

25   Downtown properties.  For purposes of initial discovery, this description of the type of the

26   incidents is relevant and reasonable.  In *Racine v. PHW Las Vegas, LLC*, 2012 WL 6089182

27   (D.Nev. 2012), the plaintiff alleged that she was followed to her hotel room by an unknown third

28   person, who physically attacked, robbed and sexually assaulted her.  The plaintiff requested

1  production of documents relating to prior acts or attempted acts of robbery, burglary, battery,

2  assault, sexual assault, murder, or other acts of violence on defendant's premises.  The court found

3  that the types of prior criminal acts requested by plaintiff were sufficiently similar to the crimes

4  allegedly committed against the plaintiff to be discoverable.  *Id.* at *3.

5        Although Mr. Kawamura was not sexually assaulted or murdered, this does not necessarily

6  negate the relevancy of such prior incidents.  For example, if a female patron had been attacked and

7  sexually assaulted by a stranger in the women's restroom adjacent to the men's restroom in which

8  Mr. Kawamura was attacked and robbed, the similarities between the two incidents, in terms of the

9  safety of Defendants' premises, would likely outweigh their differences.  On the other hand, a prior

10  incident in which a husband murdered his wife in a hotel room in which they were both registered

11  guests, would probably not be probative of the foreseeability of a battery and robbery committed by

12  a stranger in a ground floor restroom.  The admissibility of prior incidents can hereafter be

13  challenged and determined based on their similarity or lack thereof to the incident at issue.

14  Defendant may also object to the discovery of the details of specific incidents on the grounds that

15  they are dissimilar to the incident at issue.  The type of incidents subject to initial discovery should

16  not be so narrowly restricted, however, as to prevent Plaintiffs from uncovering incidents that, in

17  material aspects, are substantially similar to the incident in question.

18        **2.      Time Period for Which Records Must Be Produced**

19        Plaintiffs request that Defendants produce documents relating to other incidents "from

20  January 1, 1996 through the present."  Plaintiffs' counsel stated at the hearing that Plaintiffs are not

21  seeking discovery regarding incidents that occurred after the May 26, 2010 attack on the Plaintiff.

22  Plaintiffs stated that they have requested records regarding incidents that occurred as far back as

23  January 1, 1996, because they have discovered a civil complaint filed in the Hawaii state court in

24  1997 which involved an alleged July 5, 1996 incident in which a hotel guest was attacked and

25  robbed in a ground floor restroom at the California Hotel.  *See Plaintiffs' Reply (#145), Exhibit V.*

26  According to the complaint, the circumstances of that earlier incident appear quite similar to the

27  incident involving Mr. Kawamura.  *Id.*

28  . . .

In *Gordon v. Starwood Hotels & Resorts*, 821 F.Supp.2d 1308, 1313 (N.D.Ga. 2011), the court stated that in order to be substantially similar, the prior crimes must (1) occur in comparable locations, (2) under similar physical circumstances and conditions, (3) be of similar type, and (4) *not be too remote in time*. In *Racine v. PHW Las Vegas, LLC*, 2012 WL 6089182 at *3, the court ordered defendants to produce records regarding similar incidents for the five years preceding the attack on plaintiff. Defendants cite cases in which the courts have limited the admissibility of prior accidents or incidents to those occurring within four or six years prior to the subject incident. *See Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 298 (2007); *Hicks v. Six Flags over Mid-America*, 821 F.2d 1311, 1315-16 (8th Cir. 1987); *Jones v. Otis Elevator*, 861 F.2d 655, 661-72 (11th Cir. 1988); *Jones & Laughlin Steel Corp. v. Matherne*, 348 F.2d 394, 400 (5th Cir. 1965); and *Lenigan v. Syracuse Hancock Intern. Airport*, 2013 WL 149461 (N.D.N.Y. 2013). Of these cases, only *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, involved the discovery of prior incidents involving similar criminal acts committed by third persons. In that case, the court initially ordered defendant to produce reports of prior incidents up to 15 years before the incident at issue. The court subsequently limited the discovery to a much shorter time period based on defendant's showing of the substantial undue burden and expense it would incur to search for and produce records of similar prior incidents.[2]

According to Defendants, prior to 2004, security reports regarding accidents or incidents were prepared by hand and were stored in files by name and/or incident number. Defendants state that they would be required to perform manual searches of thousands of files to determine if they involved incidents similar to the incident in this case. Defendants began using the Access computer software program in 2004. Defendants have indicated that it may also be burdensome to

---

[2] The other cases cited by Defendants involved claims for injuries caused by defective products or physical conditions on the defendant's premises. However, other courts have rejected any specific time limitation on the admissibility of prior accidents or incidents. In *Great Plains Christian Radio, Inc. v. Ryan*, 2006 WL 6869918, *6 (D. Kan. 2006), the court citing *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1140 (10th Cir. 2004), stated that the Tenth Circuit does not include a consideration of time and noted that the court has held that evidence that a company was aware of a problem as much as twenty years prior to plaintiff's accident was admissible to demonstrate notice of a defective condition or component.

1    locate and produce documents regarding incidents that were maintained in the Access system.

2      Under the circumstances, it appears reasonable to require the Defendants to produce records

3 of prior incidents between January 1, 2004, or the date that Defendants began using the Access

4 system, and May 26, 2010, the date of the attack on Plaintiff.[3]  While Defendants will be permitted

5 to make a further showing regarding the burden of producing documents relating to incidents that

6 occurred during the 2004-2008 time period, the fact that a corporation has an unwieldy record

7 keeping system which requires it to incur the heavy expenditures of time and effort to produce

8 requested documents is an insufficient reason to prevent disclosure of otherwise discoverable

9 information.  *Residential Constructors, LLC v. Ace Property and Cas. Ins. Co.*, 2006 WL 158122,

10 *2 (D.Nev. 2006), citing *Caruso v. Coleman Corp.,* 157 F.R.D. 344, 349 (E.D.Pa.1994); *Baine v.*

11 *General Motors Corp.,* 141 F.R.D. 328, 331 (M.D.Ala. 1991); *Snowden v. Connaught*

12 *Laboratories, Inc.,* 137 F.R.D. 325, 332-33 (D.Kan. 1991); *Pollitt v. Mobay Chemical Corp.,* 95

13 F.R.D. 101, 105 (S.D.Ohio 1982); *Baxter Travenol Labs. Inc. v. LeMay,* 93 F.R.D. 379, 383

14 (S.D.Ohio 1981); *Dunn v. Midwestern Indemnity,* 88 F.R.D. 191, 197-98 (S.D.Ohio 1980);

15 *Kozlowski v. Sears, Roebuck,* 73 F.R.D. 73 (D.Mass. 1976).  *See also Merix Pharmaceutical Corp.*

16 *v. Glaxosmithkline Consumer Health Care, L.P.*, 2006 WL 2931260, *5 (N.D. Ill. 2006).

17      **3.**      **The Premises for Which Records Must Be Produced**

18      NRS 651.015 limits the liability of innkeepers for criminal attacks committed by third

19 persons, not only by requiring that the court make the initial determination of foreseeability, but

20 also by limiting evidence of foreseeability based on prior similar incidents to incidents that

21 "*occurred on the premises*."  *See* NRS 651.015.3(b).  Main Street Station and the California Hotel

22 are located directly across the street from each other and are physically connected by an overhead

23 pedestrian walkway.  Mr. Daugherty has been in charge of security for both properties since 1999

24 and their security records have been maintained in common computer software systems since 2004.

25 It therefore seems likely that security supervisors and officers in both properties would be informed

26

27      [3] Plaintiffs waited until near the end of the discovery period to pursue their motion to compel.  Had they pursued this issue earlier, they may have been able to conduct discovery regarding the accessibility of

28 records regarding prior incidents.

1    of incidents occurring at both properties, particularly crimes of violence committed by outside or

2    unknown perpetrators.  It is also reasonable to believe that security concerns arising from incidents

3    at the California Hotel could affect security measures taken at Main Street Station and vice versa.

4    Based on the physical proximity and connection between Main Street Station and the California

5    Hotel, and their common security management and record keeping system, the Court concludes that

6    records regarding prior similar incidents that occurred at the California Hotel are discoverable.

7         The common security management and record keeping system also exists with respect to the

8    Fremont Hotel.  The Fremont Hotel, however, is not physically adjacent to or connected to Main

9    Street Station, although it is located in the same Downtown business and hotel/casino area.  The

10   meaning of  "premises," as used in the statute, cannot reasonably be expanded to include a

11   hotel/casino located a few blocks away from the premises where the subject attack occurred.

12   Accordingly, the Court will not order production of prior similar incidents that occurred at the

13   Fremont Hotel.

### CONCLUSION

15        Based on the foregoing, the Court concludes that Plaintiffs are entitled to the production of

16   security incident reports, and related records, relating to any prior physical attacks, assaults,

17   batteries, sexual assaults, robberies, and/or murders that occurred on the premises of Main Street

18   Station and the California Hotel between January 1, 2004 or the first date in 2004 that Defendants

19   began using the Access computer software system, whichever is later, and the date of the criminal

20   attack on Plaintiff, May 26, 2010.  Defendants may request that the Court modify its order

21   regarding the production of records for the period 2004 to 2008 based on a demonstration that it

22   would be unduly burdensome to produce such records.  Defendants may also move for the issuance

23   of a protective order regarding the production of records regarding a specific prior incident on the

24   grounds that the incident is not sufficiently similar to the incident involving the Plaintiff to justify

25   the production of such records.  Upon a showing of good cause, the Court may direct that such

26   records be submitted for *in camera* review prior to determining their discoverability.   Accordingly,

27        **IT IS HEREBY ORDERED** that Plaintiffs' Motion to Compel Production of Documents

28   (#131) is **granted**, in part, and **denied**, in part, pursuant to the foregoing provisions of this order.

1       **IT IS FURTHER ORDERED** that Defendants may file a supplemental brief and

2   supporting affidavits regarding the burden of producing records of prior incidents during the period

3   from 2004 to 2008 on or before **August 20, 2014**.  Plaintiffs may file a response to Defendants'

4   supplemental brief on or before **August 27, 2014**.

5       DATED this 13th day of August, 2014.

6

7                                          _____

8                                          GEORGE FOLEY, JR.
                                           United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28