UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CALVIN KAWAMURA and JEANIE KAWAMURA,<br><br>                              Plaintiff(s),<br><br>    v.<br><br>BOYD GAMING CORPORATION, et al.,<br><br>                              Defendant(s). | Case No. 2:13-CV-203 JCM (GWF)<br><br>ORDER |

Presently before the court is defendants Boyd Gaming Corporation and M.S.W., Inc., dba Main Street Station Casino Brewery Hotel's (collectively "defendants") motion for summary judgment. (Doc. # 207). Plaintiff Calvin Kawamura (hereinafter "plaintiff") filed a response, (doc. # 215), and defendants filed a reply, (doc. # 225). Plaintiff then filed a sur-reply, (doc. # 229), and defendants filed a response to the sur-reply, (doc. # 230).[1]

---

[1] Plaintiff moved for leave to file a sur-reply in this matter. (Doc. # 226). Magistrate Judge Foley granted plaintiff's motion and allowed plaintiff to file a sur-reply and defendants to file a response to plaintiff's sur-reply.

Plaintiff then impermissibly filed a reply to defendants' response to its sur-reply. (Doc. # 232). Defendants filed a motion to strike plaintiff's reply. (Doc. # 233). Plaintiff filed a response to defendants motion to strike, (doc. # 234), asserting that the court granted him leave to file a reply, because the notice of electronic filing on the case docket stated that plaintiff's reply to defendants' response was due by July 24, 2015. (*See* doc. # 230). An automated deadline from the clerk's office is not the same as, nor does it override the express language of the court's order. Magistrate Judge Foley expressly granted the plaintiff only a sur-reply, and defendants only a response to the sur-reply. The court will not consider plaintiff's improperly filed reply to its sur-reply. Accordingly, the court will deny defendants' motion to strike as moot.

**James C. Mahan**
**U.S. District Judge**

Also before the court is defendants' motion for partial summary judgment on plaintiff's gross negligence and punitive damages claims. (Doc. # 206). Plaintiff filed a response, (doc. # 213), and defendants filed a reply, (doc. # 223).

Finally before the court is defendants' amended renewed motion to exclude expert opinion testimony. (Doc. # 210).[2] Plaintiff has not filed a response to defendants' motion to exclude. The court construes defendants' motion as a motion *in limine*.

I.   Background

Spouses Calvin and Jeanie Kawamura (collectively "the Kawamuras") are residents of the state of Hawaii. The incident at issue occurred when the Kawamuras visited Las Vegas in May 2010.

On or about May 26, 2010, the Kawamuras were gambling on the main casino floor of the Main Street Station Casino in downtown Las Vegas. At some point during the late evening to early morning hours, Calvin left Jeanie in search of the men's restroom. While in the restroom, an individual later identified as Christopher Corson ("Corson") assaulted Calvin, knocked him unconscious, and robbed him. Corson was homeless and had allegedly been hiding in the men's restroom.

Paramedics transported Calvin to the emergency room, where he underwent several x-rays and CT scans. Emergency room physicians determined that Calvin sustained multiple fractures to his face and skull, and that his brain was bleeding.

Calvin left the hospital on May 29, 2010, and the couple returned to Hawaii on June 2, 2010. Calvin continued to experience complications from the assault, which required him to undergo additional CT scans and multiple burr hole evacuations.[3] Plaintiff alleges that he and his wife live in constant fear that Calvin will suffer another brain bleed, are always "on edge," and that Calvin's cognitive abilities have declined significantly as a result of the attack.

---

[2] Defendants' renewed motion to exclude expert opinion testimony, (doc. # 209), is moot.

[3] A burr hole evacuation is a medical procedure in which doctors drill a hole into the patient's skull in order to remove blood clots forming in the brain.

Plaintiff has retained Ken Braunstein (hereinafter "Braunstein") as an expert witness. Braunstein is an expert in casino security. Defendants filed a motion *in limine* to exclude Braunstein's testimony for failing to meet the standard for expert witness testimony in federal court. (Doc. # 210).

## II. Legal standards

### a. Summary judgment

The Federal Rules of Civil Procedure provide for summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 323-24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data.  *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial.  *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted.  *See id.* at 249-50.

   b.   Motion in limine

"The court must decide any preliminary question about whether . . . evidence is admissible."  Fed. R. Evid. 104.  Motions *in limine* are procedural mechanisms by which the court can make evidentiary rulings in advance of trial, often to preclude the use of unfairly prejudicial evidence.  *United States v. Heller*, 551 F.3d 1108, 1111-12 (9th Cir. 2009); *Brodit v. Cambra*, 350 F.3d 985, 1004-05 (9th Cir. 2003).

"Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials."  *Luce v. United States*, 469 U.S. 38, 41 n.4 (1980).  Motions *in limine* may be used to exclude or admit evidence in advance of trial.  *See* Fed. R. Evid. 103; *United States v. Williams*, 939 F.2d 721, 723 (9th Cir. 1991) (affirming district court's ruling *in limine* that prosecution could admit impeachment evidence under Federal Rule of Evidence 609).

Judges have broad discretion when ruling on motions *in limine*. *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002); *see also Trevino v. Gates*, 99 F.3d 911, 922 (9th Cir. 1999) ("The district court has considerable latitude in performing a Rule 403 balancing test and we will uphold its decision absent clear abuse of discretion.").

"[*I*]*n limine* rulings are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *accord Luce*, 469 U.S. at 41 (noting that *in limine* rulings are always subject to change, especially if the evidence unfolds in an unanticipated manner). "Denial of a motion *in limine* does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Conboy v. Wynn Las Vegas, LLC*, no. 2:11-cv-1649-JCM-CWH, 2013 WL 1701069, at *1 (D. Nev. April 18, 2013).

      c.   Expert testimony

An expert witness may testify at trial if the expert's "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. A witness must be "qualified as an expert by knowledge, skill, experience, training, or education" and may testify "if (1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Id.; see also Kumho Tire v. Carmichael*, 526 U.S. 137, 141 (1999). Expert testimony is liberally admitted under the Federal Rules of Evidence. *See Daubert,* 509 U.S. at 588 (noting that Rule 702 is part of the "liberal thrust of the Federal Rules and their general approach of relaxing the traditional barriers to opinion testimony"); *see also* Fed. R. Evid. 702 (advisory committee notes to 2000 amendments) ("[R]ejection of expert testimony is the exception rather than the rule.").

The "trial judge must ensure that any and all [expert] testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. "Concerning the reliability of non-scientific testimony . . . , the *Daubert* factors (peer review, publication, potential error rate, etc.) simply are not applicable to this kind of testimony, whose reliability depends heavily on the knowledge and

1  experience of the expert, rather than the methodology or theory behind it." *Hangarter v. Provident*
2  *Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (citations omitted).

3  In such cases, the trial court's gatekeeping role under *Daubert* involves probing the
4  expert's knowledge and experience.  *See id.* at 1018.  "It is the proponent of the expert who has
5  the burden of proving admissibility." *Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th
6  Cir. 1996).  Admissibility of the expert's proposed testimony must be established by a
7  preponderance of the evidence. *See Daubert*, 509 U.S. at 592 n. 10 (citation omitted).

8  **III.  Discussion**

9  Defendants move for summary judgment in regards to plaintiff's negligence claims
10 generally, which stem from the events of May 26, 2010.  (Doc. # 207).  Seemingly in the
11 alternative, defendants also move for partial summary judgment in their favor on the issues of
12 gross negligence and punitive damages in regards to the events of May 26, 2010.  (Doc. # 206).

13     a.  Negligence

14 Plaintiff sues defendants on a negligent security theory.  To prevail, a plaintiff generally
15 must show that: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached
16 that duty; (3) the breach was the proximate cause of the plaintiff's injury; and (4) the plaintiff
17 suffered damages.  *Perez v. Las Vegas Med. Ctr.*, 805 P.2d 589, 590 (Nev. 1991).  In a negligence
18 action, the court should consider summary judgment with caution.  *See Sims v. Gen. Tel. & Elec.*,
19 815 P.2d 151 (Nev. 1991).  The court will examine each element for any triable issues of material
20 fact.  Accordingly, the first inquiry is whether defendants owed any duty to plaintiff.

21        i.  Duty

22 Plaintiff argues that defendants were negligent because they owed a duty to plaintiff and
23 the other guests of Main Street Station to place adequate security near the restroom where plaintiff
24 was robbed.

25 Nevada law evaluates the foreseeability element of duty in innkeeper liability cases by
26 evaluating both the "location and character of the [defendant's] business" and the prior similar
27 crimes committed on the premises.  *Doud v. Las Vegas Hilton Corp.*, 864 P. 2d 796, 800-01 (Nev.
28 1993).  Plaintiff and his expert maintain that Main Street Station Hotel and Casino's neighborhood

James C. Mahan
U.S. District Judge

- 6 -

is "inherently dangerous" and they present statistics showing that the casino's neighborhood has an "average risk of crime . . . fifteen times higher" than that of the entire United States. (Doc. # 213 at 11).

Defendants do not deny that their casino is in an inherently dangerous neighborhood. However, defendants assert that Main Street Station is not inherently dangerous simply because its surrounding neighborhood is dangerous. Defendants state that plaintiff's statistics provide "absolutely no evidence about what is going on inside a particular casino." (Doc. # 223 at 7).

The court finds defendants' assessment of plaintiff's statistics unpersuasive. Any business that opens its doors to the public is likely to be affected by the segment of the public that lives closest to its premises. Neighborhood crime statistics would provide important information for analyzing the foreseeability of a crime on Main Street Station's premises.

Plaintiff offers evidence of prior crimes at Main Street Station and maintains that these crimes are sufficiently similar to his assault and robbery. Plaintiff notes an attempted robbery outside another of the casino's restrooms and an "assault of a wheelchair bound guest in the casino restroom." (Doc. # 215 at 28). Plaintiff also notes numerous other incidents involving transients loitering in casino restrooms, "undesirables" stalking casino patrons, and other assaults and batteries on the premises. (Doc. # 215 at 28-29).

Defendants counter that none of the prior crimes noted by plaintiff involved a serious injury. (Doc. # 225 at 12-13). However, the foreseeability standard is silent as to whether a given crime must involve a similar degree of injury to the victim to be considered a prior similar crime. Two of plaintiff's noted crimes did occur in hallways leading to Main Street Station's men's restrooms. A reasonable jury could conclude that defendants had notice of enough prior similar crimes to conclude that a crime in or around a restroom was foreseeable.

The location and character of defendants' casino and the prior similar crimes committed inside the casino all indicate that a jury could find that the assault against plaintiff was foreseeable. Therefore, triable issues of fact exist as to whether defendants owed a duty to plaintiff. Accordingly, the court will deny defendants' motion for summary judgment.

. . .

James C. Mahan
U.S. District Judge

- 7 -

        b. *Gross negligence and punitive damages*

          i. *Gross negligence*

Gross negligence is "very great negligence, or the absence of slight diligence, or the want of even scant care . . . [or] indifference to present legal duty . . . [or] utter forgetfulness of legal obligations so far as other persons may be affected." *Hart v. Kline*, 116 P.2d 672, 672 (Nev. 1941). The Ninth Circuit has held that "[w]hat is 'gross' in [a] particular case is a matter of fact that must be left to the determination of the reasonable persons making up the trier of fact." *Chem. Bank v. Sec. Pac. Nat'l Bank*, 20 F.3d 375 (9th Cir. 1994).

However, "Rule 56(c) mandates the entry of summary judgment, after an adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Plaintiff alleges that defendants' conduct was grossly negligent because the "stagnant" policies and procedures in Main Street Station's security department allowed "undesirables" to enter the casino and commit crimes. (Doc. # 213 at 11). Further, plaintiff alleges that defendants knew that these "undesirables" posed a higher risk to the elderly, yet they trained their casino security to focus more on watching the flow of casino money than protecting casino guests. Plaintiff maintains that these shortcomings prove that defendants were grossly negligent.

Defendants respond in two ways. First, they assert that the actions casino security personnel took after the attack amounted to reasonable care, or at least rose to the level of "scant care" that allows them to evade accusations of gross negligence. Plaintiff responds by stating that defendants' post-accident actions have no bearing on whether they took enough pre-accident steps to prove that they were not grossly negligent when they failed to protect plaintiff.

Second, defendants maintain that Corson attacked plaintiff so quickly as to make the harm plaintiff endured completely unforeseeable. Defendants state that the homeless assailant entered the restroom, attacked the plaintiff, and left – all within one minute (Doc. # 223 at 15).

Defendants base their assertion that they were not grossly negligent largely on *Racine v. PHW Las Vegas, LLC*, 46 F. Supp. 3d 1028 (D. Nev. 2014), which is not binding on this court.

James C. Mahan
U.S. District Judge

- 8 -

In *Racine*, a man sexually assaulted a female guest at the Planet Hollywood Resort and Casino after he had been following several other female guests. The *Racine* court found that Planet Hollywood was not grossly negligent because it "had security personnel" on the premises who "took statements from" the victims; that the security personnel contacted Las Vegas Metropolitan Police Department; and that Planet Hollywood "maintained video surveillance of the premises." 46 F. Supp. 3d at 1044.

Plaintiff responds that defendants misinterpret *Racine*. Plaintiff asserts that defendants' actions are distinguishable from Planet Hollywood's actions in *Racine* because Planet Hollywood took steps before Ms. Racine's attack, while defendants simply took corrective steps only after Corson attacked him.

The care involved in tort analysis focuses on the reasonable care a defendant takes to "prevent" a plaintiff from sustaining a foreseeable injury. *Kensinger v. E.I. Du Pont de Nemours*, 244 Fed. Appx. 114, 115-16 (9th Cir. 2007). Defendants' focus on their security officers' post-accident actions does not absolve defendants from a finding of gross negligence as a matter of law. Therefore, the court will deny defendants' partial summary judgment motion.

### ii.   Punitive damages

A plaintiff must demonstrate by clear and convincing evidence that the defendant is guilty of oppression, fraud, or express or implied malice in order to receive an award of **punitive damages**. N.R.S. § 42.005(1). This **standard** requires that the plaintiff produce evidence "so clear as to leave no substantial doubt." *Wynn v. Smith,* 16 P.3d 424, 431 (Nev. 2001), that the defendant "acted with a culpable state of mind." *Countrywide Home Loans, Inc. v. Thitchener,* 192 P.3d 243, 255 (Nev. 2008).

Where a plaintiff has not met this burden, the court may deny a claim for punitive damages as a matter of law. *See e.g., Warmbrodt v. Blanchard,* 692 P.3d 1282, 1286 (Nev. 1984) (superseded by statute on other grounds) (holding permissible a trial court's refusal to give a punitive damages instruction where evidence to support such damages had not been received in the case).

James C. Mahan
U.S. District Judge

1  Defendants maintain that plaintiff does not have clear and convincing evidence of
2  punitive damages, and they state that plaintiff pleads the boilerplate language for punitive
3  damages without alleging any specific facts showing oppression, fraud, or malice. Plaintiff
4  alleges that defendants acted with either oppression or implied malice when they deliberately
5  failed to avoid the "probable harmful consequences" of vagrants stalking their patrons in
6  "vulnerable locations." (Doc. # 213 at 20).

7  Further, plaintiff alleges that defendants' failure to keep watch over their patrons was
8  deliberate because the casino and its security forces were more concerned with "watching the
9  money during scheduled pit drops and slot drops." (Doc. # 215 at 9-12).

10  Plaintiff offers this explanation as an alternative to other possible theories for defendants'
11  conduct, such as gross or simple negligence. The court finds that enough evidence exists to
12  allow a factfinder to determine whether defendants acted with oppression or implied malice.
13  Therefore, the court will deny defendants' partial motion for summary judgment on the issues of
14  gross negligence and punitive damages.

15      c. *Motion in limine – expert testimony*

16  Defendants seek to exclude Ken Braunstein as plaintiff's security expert. Braunstein has
17  served as an expert witness for casino security cases for over 35 years. Presumably, Braunstein
18  will opine that defendants were grossly negligent for failing to post adequate security near the
19  restroom where plaintiff was assaulted.

20  In his December 22, 2014, deposition, Braunstein refers to a report in which he drew four
21  conclusions: (1) that defendants' security is inadequate; (2) that the Main Street Station casino is
22  poorly managed; (3) that defendants' hiring process for casino security officers is lacking; and (4)
23  that the casino failed to follow its own procedures. (Doc. # 210-1).

24  Defendants seek to exclude Braunstein's testimony. According to defendants, Braunstein's
25  opinions include legal conclusions that could "improperly determine the outcome of the case."
26  (Doc. # 210 at 2). However, Rule 704 states that "[a]n opinion is not objectionable just because it
27  embraces an ultimate issue." Fed. R. Evid. 704. "That said, an expert witness cannot give an
28  opinion as to [his] legal conclusion, i.e., an opinion on an ultimate issue of law. Similarly,

James C. Mahan
U.S. District Judge

- 10 -

instructing the jury as to applicable law is the distinct and exclusive province of the court." *Nationwide Transport Finance v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) (internal citations and quotations omitted).

The court finds that Braunstein, based on his specialized knowledge in the field, may offer his expert opinion on defendants' degree of negligence in regards to its security practices. However, Braunstein may not instruct the jury that defendants were negligent as a matter of law when they made their security decisions. Accordingly, the court will deny defendants' motion to exclude the expert testimony of Ken Braunstein.

### IV.    Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendants' motion for summary judgment, (doc. # 207), be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that defendants' motion for partial summary judgment, (doc. # 206), be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that defendants' amended renewed motion to exclude the expert testimony of witness Ken Braunstein, (doc. # 210), be, and the same hereby is, DENIED. Defendants' renewed motion, (doc. # 209), is DENIED as moot.

IT IS FURTHER ORDERED that defendant's motion to strike, (doc. # 233), is DENIED as moot.

DATED August 3, 2015.

_____
UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge